[No. 7310.]

FARMERS' RESERVOIR AND IRRIGATION COMPANY V. COOPER,

ET AL.

1. WATER RIGHT—*Evidence*—The petitioner in proceedings in the Eminent Domain Act impliedly admits that those named as respondents are the owners of the land, and of all appurtenances thereof, including the right to enjoy the waters of a spring rising thereon, and seepage waters which accumulate there, all of which such respondents have for many years applied to beneficial uses.

2. EMINENT DOMAIN—*Damages to Land Not Taken*—In proceedings under the statute of eminent domain the jury should allow all damages, present and prospective, which are the natural and necessary or reasonable incident of the taking.

3. ——*Negligent or Wrongful Construction*—Anticipated damages, by reason of the negligent or unlawful construction of the improvement, by the petitioner, are not to be allowed. But where, before the hearing the petitioner had assumed possession, and constructed an irrigating canal across a gulch or ravine, by means of an embankment, without any opening, and had thus prevented the land owner from receiving the waters of a spring which rose above the

embankment, and seepage waters which before that had, with the waters of the spring been wont to flow down the gulch, and had for years been applied by the land owner to beneficial uses, it was *held*, not a case of anticipated damages, but an actual, present injury, depreciating the value of the land not taken, and for which, though resulting from the manner in which the work was constructed was properly considered, in the estimate of damages.

4. ——*Incidental Damages*—Destruction of growing crops, injury by flooding, to an orchard, upon the land not taken, and to buildings situate thereon, additional fencing made necessary by reason of the improvement, and that portions of the land are made inaccessible and practically valueless, are proper matters of consideration, as bearing upon the difference in market value, before and after the taking, of the land not taken; but not as constituting separate elements of damage. No allowance should be made for these particular injuries, as such. They are to be considered solely as bearing upon the depreciation in value of the land not taken.

5. ——*Evidence*—*Rental Value*, of the land, within a time reasonably proximate to the time of the assessment, may be shown to aid in estimating the depreciation in value of the land not taken. The assessment being had in March, 1910, *held*, that the rate at which the land rated prior to 1908, was properly rejected, as too remote.

*Appeal from Jefferson District Court.*—HON. JOHN T. SHUMATE, Judge.

Mr. W. A. DIER, *Messrs.* SMITH, BROCK and FERGUSON and Mr. W. W. PLATT, for Appellant.

MR. F. T. JOHNSON, for Appellees.

Mr. JUSTICE GABBERT delivered the opinion of the court:

The Farmers' Reservoir and Irrigation Company instituted proceedings under the Eminent Domain Act to condemn a right of way for its canal across a quarter section of land owned by A. A. Cooper and occupied by Frank Merrick, as tenant, under a lease from Cooper, both of whom were made parties to the proceeding.. The case was tried to a jury and a verdict brought in, fixing the value of the land actually taken at $747.50, and the damages to the residue at $6,229.00,

and a judgment rendered accordingly. From this judgment the company has appealed. For convenience, we shall hereafter refer to the appellant as petitioner, and the appellees as respondents, that being their relation in the court below.

The quarter section is crossed by a depression, which runs diagonally across the center of the tract from the north to the south line, and is mentioned in the testimony as Spring Gulch.

When the proceedings were instituted, the petitioner was granted immediate possession of the land sought to be condemned. Under this order the canal was constructed and completed before the case was tried. On the land there was a natural spring, the flow from which was augmented by seepage water originating on the land, all of which flowed down Spring Gulch. The right of way crosses this gulch below the spring, and the point where the seepage water originated. Over and through this tract petitioner built what is referred to in the testimony as the Croke Canal. This canal was carried across Spring Gulch by a fill, without any opening. As we understand the record, a reservoir had been constructed by respondents and their grantors which was supplied with water from Spring Gulch. Other improvements on the land consisted of a house, barn, and outbuildings, and an orchard, all of which were located above the canal, and in the near vicinity of Spring Gulch. The right of way destroyed some of these improvements.

On behalf of respondents resulting damages, that is, damages to the land not taken for the right of way, were claimed, based upon the ground that the canal, as constructed, prevented the use of the water flowing in Spring Gulch, and cut off the water supply for the reservoir.

Witnesses for respondents were asked the following question: "Assuming that the spring of water, together with the seepage water, situated in the draw in and above and upon the right of way of this company is practically destroyed, taken and appropriated by this company; assuming

that the reservoir now located on the land is practically made useless for the purpose it was used for and can be used, * * * What would be the actual diminution in the market value of this land?" We understand by "this land" is meant the remainder of the tract not actually taken for right of way. The answers varied from twelve hundred to twenty-five hundred dollars.

Counsel for petitioner contend that an objection to this question should have been sustained for three reasons: (1) That it was based upon an assumption contrary to the facts; (2) that even if the use of the water from Spring Gulch was prevented and destroyed by the construction of the canal, it was not a proper element to consider in estimating damages, for the reason that respondents showed no right to the use of such water; and (3) that, under the petition, the cutting off of the water was not a matter for which damages could be recovered in this action.

As previously stated, the cause was tried after the canal had been constructed, and we should here note that the jury viewed the premises.

The testimony on behalf of respondents tended to prove that the water flowing down Spring Gulch from the sources named was arrested in its flow, and accumulated behind the fill and overflowed into the canal, which prevented it from passing beyond the right of way occupied by the ditch. Below the canal was a reservoir on the land, which, previous to the construction of the canal, was supplied with from from the spring and the seepage in question; that the spring water was suitable for domestic use; that in connection with the seepage water, it was suitable for stock, and irrigation purposes, and that the water from these sources which accumulated in the reservoir was good for irrigation, stock, fish, and ice purposes; that it had been used for all these purposes by respondents, in connection with the quarter section involved; that the spring furnished the sole supply for domestic use; and that the fill, right of way, and accumulation of water be-

hind the fill so covered up the waters from the spring, that it was rendered inaccessible and no longer fit for domestic use.

There may be some conflict in the testimony as to the extent the use of the water from Spring Gulch is interfered with by the construction of the canal; but this conflict was a matter for the jury to determine, and as they viewed the premises, and there is testimony to prove the facts upon what may be termed the hypothetical question propounded to witnesses for respondents was based, we are of the opinion that the contention by counsel for petitioner, that the question was based upon an assumption contrary to the facts, is not supported by the record.

In our opinion there is no merit in the contention that petitioner is not liable to respondents for the depreciation in the value of the land not taken resulting from destroying the use of water from Spring Gulch, upon the ground that they did not establish a right to its use. The petitioner commenced these proceedings, naming the respondents as the parties in whom the title to the land was vested, thereby admitting, in the absence of a special averment to the contrary, that they were the owners of the land, and everything upon it which might be regarded appurtenant. The water involved originated on this land. It had been applied by respondents and their grantors to beneficial uses upon the land for many years prior to the construction of the canal, through the reservoirs and ditches constructed by Cooper and his grantors. We think this is sufficient, in connection with the conceded ownership of the land, to make a *prima facie* case establishing in respondents the right to the use of water from Spring Gulch as an appurtenance to the land.

In condemnation proceedings, the owner across whose land a right of way is taken, is entitled to recover damages to the residue caused by such right of way, equal to the diminution in the market value of such residue for any use to which it may reasonably be put.—*Colo. Midland Ry. Co. v. Brown,* 15 Colo. 193. It is true the petitioner is not attempting to

condemn the spring and seepage water for its own use, but by constructing its ditch in the place and manner it did, it has interfered with the use of water belonging to respondents upon their land as theretofore enjoyed by them. This necessarily depreciates its market value, and to this extent the petitioner should respond in damages, not for the value of water taken or appropriated, but because by the construction of its canal, it has depreciated the value of respondents' land by depriving them of the use of water thereon to which they are entitled.

In condemnation proceedings all damages, present and prospective, that are the natural, necessary or reasonable incident of taking the property sought to be condemned, must be assessed, but this does not include such as may be anticipated from negligent or unlawful construction of an improvement thereon by the petitioner.—*Denver City I. & W. Co. v. Middaugh,* 12 Colo. 434. Based upon this proposition, counsel for petitioner contend that respondents are not entitled to recover damages resulting to the residue of the land occasioned by being deprived of the use of the spring and seepage water, for the reason that if damages are thus caused, they are the result of the unskillful construction of the canal across the gulch down which these waters naturally flow. This conclusion is not tenable. Petitioner constructed its canal across the gulch by means of a fill. By so constructing it, respondents have been deprived of the use of spring and seepage water, which is the natural result of constructing the canal in the manner the petitioner did, by means of which damages have been occasioned at the very time they were assessed; hence, respondents are not claiming anticipated damages for negligent or unskillful construction, but damages which directly result from the taking of the land and the construction of the canal, which had been suffered at the time the case was on trial, as an incident to the taking of the right of way, and the construction of the canal thereover, and which will continue in the future. In such circumstances, depriving respondents of the water to which they are entitled is in no sense an inde-

pendent tort which should be the subject of an independent action.

On the land were located a house, out-houses and a barn; also, an orchard, consisting of about fifty trees, and some growing crops. Some of these improvements were on the right of way and destroyed. Others, it was claimed, by reason of the near proximity of the canal, were rendered useless. The orchard in part was flooded by the water collecting back of the fill. The crops growing on the right of way were injured or destroyed. Testimony regarding the value of these improvements, crops and orchard was introduced by respondents, and the extent the market value of the residue was injured by reason of the destruction or injury of these items. A general question was propounded to witnesses for respondents, the object of which was to elicit an answer as to what the effect on the market value of the residue of the land would be, assuming that these items were injured or destroyed. Counsel for petitioner insist that from this question, which the witnesses were permitted to answer, the jury were allowed to infer that in estimating the damages to the land not taken, they were authorized to consider the value of such land, plus the value of crops destroyed, the value of buildings injured or destroyed, as well as the value of other items included in the question. In condemnation proceedings, double damages are not allowable, so that in estimating damages to the land not taken for a right of way, the value of improvements injured and destroyed are not to be considered, standing alone; but, in estimating damages to the residue a wide range of evidence is admissible. If an improvement is injured or destroyed by a right of way, necessarily the market value of the residue is depreciated; for in estimating the value of lands, the improvements thereon cut more or less of a figure. For this reason, the value of the improvements injured or destroyed by the right of way are proper to consider, not as constituting separate elements of damage, but in estimating the depreciation of the value of the land not taken. We think this was the pur-

pose and purport of the question, and was so understood and treated by the jury, as the court, in instructing them, stated, in effect, that in estimating the damages, if any, to the residue of respondents' land, they were not authorized to assess damages for each specific element or item of alleged damage, which may have been shown by the evidence, but that their consideration of these elements of damage could only be considered by them in so far as they found, from the evidence and from their view of the premises, that the fair cash market value of the residue of the land was thereby depreciated by the construction of petitioner's canal, and that none of these elements of damages could be considered as independent of, and additional to, the depreciation of the value of the residue, and concluded the instruction by stating: "The question is, after considering all proper elements of damages, as limited by these instructions, and rejecting all remote and speculative elements of damages; how much is the fair, cash market value of the residue of said lands, not taken, decreased or diminished in value by reason of the construction and operation of said canal?" In this connection, it is not amiss here to note, that this instruction carefully guarded the rights of the petitioner with respect to the value of the right to the use of the water which the respondents claimed was rendered useless by reason of the construction of the canal.

Counsel for petitioner also contend that from the evidence admitted and the instructions given, the jury were authorized to assess, as damages, the expense of additional fencing. This contention is not supported by the record. To the extent the taking of the right of way impaired the value of the residue, respondents were entitled to be compensated. If the future use of the residue required additional fencing, and this fact would render it less valuable than it would otherwise have been, then this was proper to consider in estimating damages to the residue, not, however, as a separate element equal to the cost of increased fencing, but the amount of depreciation in the value of the residue caused by the increased

burden upon its use.—*Newgass v. Railway Co.,* 54 Ark. 140. This was the purport of the instructions of the court bearing on the subject.

At the trial counsel for petitioner, on the cross-examination of a witness for respondents, elicited the fact that the quarter section had been rented for the years 1908 and 1909 for between three and four hundred dollars per annum. They afterwards introduced testimony tending to prove that for the years 1902 or 1903 to 1907, inclusive, the place had rented for one hundred and fifty to two hundred dollars per annum. On motion of respondents the testimony relating to the rent received prior to 1908 was stricken, upon the ground that it was too remote. Where a tract of land is injured by taking a portion of it in the exercise of the power of eminent domain, it is proper in determining the damages to consider the income derived from it. Testimony on this subject, however, ought to be limited to a period reasonably proximate to the time the damages are being assessed, as such testimony tends better to establish a rental value than what such value may have been several years prior. We think the court did not err in striking the testimony under consideration.

Numerous errors are assigned upon the admission of testimony by respondents, the purpose of which was to show injury to the residue of their land, as the result of the construction of the canal. We do not believe it is necessary to consider the various questions thus raised in detail, as we think the testimony challenged was competent as tending to prove what might reasonably and naturally be anticipated would occur in the future which would affect the market value of the residue.

It is finally urged that the verdict is excessive. The jury viewed the premises. There is ample testimony to support their verdict. It does not appear that incompetent testimony was admitted. It appears that the canal enters the quarter section near the southeast corner, and after a meandering

course of about three-quarters of a mile, leaves the premises near the northwest corner, thereby cutting into and through three of the four forty-acre tracts constituting the land involved; that the amount of land actually taken for the right of way is about eight acres, but on account of the course of the canal, the manner of its construction, and its future method of operation, about six acres outside of the right of way are practically made valueless. The jury were carefully instructed what matters they should consider in estimating damages. In such circumstances it is not within the province of this court to say from a review of the testimony that the jury erred in rendering the verdict they did.

The judgment of the district court is affirmed.

*Judgment affirmed.*

Chief Justice Musser and Mr. Justice Hill concur.