ALBERTI, Appellant, vs. GORDON, Respondent.

*March 9—April 7, 1937.*

440

*Harold J. McGrath* of Milwaukee, for the appellant.

For the respondent there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur Wickham* of counsel, all of Milwaukee, and oral argument by *Mr. Wickham.*

FAIRCHILD, J.   The state of the evidence at the close of the trial was such as to require a directed verdict in defendant's favor.   This becomes apparent from a consideration of the testimony offered by the plaintiff in support of her claim that the severance of the seventh or facial nerve caused her paralysis.   It appears that infection, thrombosis, and injury to the facial nerve in an operation are among the causes of facial paralysis.   The plaintiff sought to show that a certain one of these several possible causes was more probable than any of the others as the cause of her difficulty.   Her case rests upon an assumption that there was a complete paralysis of the left side of the face immediately following the operation, and upon the claim that defendant, in effect, admitted ignoring the location of the nerve.   The testimony of the surgeon called as a witness by the plaintiff was that, if there was an immediate facial paralysis, an injury during the operative procedure was a more probable cause than thrombosis or infection.   But an examination of the evidence bearing upon the existence or nonexistence of signs of paralysis fails to show that there was an immediate onset of paralysis, or anything other than that the disturbance of the facial nerve proceeded in such a way that it might have been caused by thrombosis or infection, or both.   Dr. Scott, the

expert called by the plaintiff, testified to the effect that a number of causes will bring about facial paralysis, depending upon where the particular diseased condition or pathology occurs. There may be "supranuclear paralysis produced by a condition which occurs from pressure or hemorrhage in diseased condition, . . ." peripheral lesion, subsequent inflammatory condition, hemorrhage of the brain, trauma, refrigeration, hemorrhagia, injury from operation. Paralysis could result from infection and it could result from the forming of a blood clot or thrombosis. Dr. Scott further testified that paralysis may be due to infection; that you may have it before an operation, when there is no operation, and you may have it after an operation. The witness expressed doubt as to the likelihood of infection causing a paralysis at the time of the operation after the infectious condition had been present for some time, as here, but with regard to thrombosis he testified as follows:

"*Q.* What would prevent a thrombosis or blood clot causing a paralysis after a period of six weeks? *A.* Nothing. After six weeks, nothing that I know of."

Dr. Scott made an examination of the plaintiff in the spring of 1936 and found "a residual facial nerve paralysis, that is, one that was not complete. . . ." The witness was asked a hypothetical question, based on the evidence in the record at that stage of the trial. He gave as his opinion:

"Assuming the facts in the hypothetical question to be correct, that the most probable cause of the facial paralysis was injury to the facial nerve during the operative procedure. . . . A severance of the nerve either by direct rupture or tearing. Not a contusion or abrasion, or an incomplete laceration, but a complete severance."

All the witnesses who testified as experts agree that, if the facial nerve were injured instrumentally, the facial paralysis would come suddenly and completely. So the question is: Did the paralysis of the muscles of the left side of plaintiff's

face occur at once or did it come on gradually and develop through several hours? The answer to this question is controlling, and determines whether or not the cause of the paralysis was an injury in the operative process for which defendant was responsible. The doctor further stated that in answering the question, he took into consideration that the facial paralysis was noticeable immediately upon the return from the operating room, and that its being immediate indicated that it was not the result of infection, because "they came on immediately according to the history." The testimony of defendant when called by plaintiff and on adverse examination as to the observation of the paralysis indicates, however, that it was not immediate, but that it increased during the course of some hours. The operation was over at 10:13 a. m. Some twenty minutes later, defendant saw plaintiff and she then manifested no unusual condition. Some time before noon, an interne noticed that the left side of her mouth was drooping. He telephoned defendant, who saw her again at noon. He then noticed the drooping of that side of her mouth; her left eye did not discharge tears at that time. Plaintiff testified her left eye was open all night and the defendant noticed the condition of the eye the next morning. Plaintiff also testified that, when she got back to her room after the operation, she noticed that saliva was coming out of her mouth; her eye was running; there was no feeling in her cheek; her taste was terrible; she was unable to close her left eye; she could not control the muscles of her left cheek. In view of the fact that she had been under a general anesthetic, and from her further testimony as to her recollections of the day of the operation, it cannot be said that the testimony above referred to is evidence of her facial condition during the day. She testified that she could not recall very distinctly what occurred when she got back from the operating room; she knew her mother and sister were there, and in the evening the rest of the family was there, but she

didn't remember anything that went on on that day; she didn't remember whether the defendant was there or not; she could recall nothing the nurses said to her. The evidence upon this point of severance of the nerve falls far short of eliminating infection or thrombosis as a cause of plaintiff's misfortune and quite certainly fails to establish that immediate paralysis of the muscles relied on as a fact by Dr. Scott in forming his opinion did occur. Thus, his testimony that one of several possible causes is more probable than the others has no weight as evidence because it was an opinion based upon a fallacious assumption. *Holton v. Burton,* 197 Wis. 405, 222 N. W. 225.

As to the question whether defendant used the proper degree of care in performing the operation, it was assumed in the hypothetical question that he—

"didn't look for the bony ridge, which carries the seventh cranial nerve, or the facial nerve, and he didn't look for the antrum area."

Defendant had testified, however, with respect to the antrum, that he didn't get into it; that he did not see it; that the lateral sinus, a large vein, lay forward,—

"which made it impossible for me to get into the antrum without running a great deal of danger of injury, or breaking into that big vein;"

that he knew where it was, "but the vein was in front of it." Upon the redirect examination of Dr. Scott, he testified that, leaving out the assumption that defendant testified he did not look for the antrum, and assuming that defendant testified he did not look for the nerve canal, or ridge in which the nerve is lodged, "that is just as negligent, in my opinion, because the location of the ridge is the first thing you must look for," and that his answer would be the same on either assumption. In performing the operation the defendant looked for and located the lateral sinus, a large vein that

might cause trouble if injured. He observed other conditions. He describes his method of proceeding in the operation:

"As far as the facial nerve in question, you naturally look for any facial canal groove. The fact is that you know that your facial canal is low in that dense bone and it is not a thing that particularly worries you in a simple mastoid."

The assumption that the defendant "testified he did not look for the nerve canal or ridge" is hardly warranted upon a full consideration of the evidence. It is impossible to conclude from the description of all that occurred that the defendant, regardless of consequences and in disregard of whatever was in or near the region, lateral sinus, mastoid antrum, tip cells, outer part of the mastoid, inner table of the skull, facial nerve, and posterior canal wall, proceeded with a curetting of the section.

It seems to have been assumed on all sides that, if the facial nerve was in its ordinary place, there would be little or no possibility of injuring it without entering the antrum. Dr. Scott thought that defendant was negligent in not locating the facial nerve and keeping away from it, particularly since there was an abnormality in the position of the lateral sinus, and that might indicate further abnormality. The procedure followed by defendant, however, would have disclosed the presence of the nerve if it had been so misplaced.

The evidence does not warrant an inference that the condition of plaintiff is traceable to any act of the defendant so as to sustain a finding of the jury to that effect. And this lack of evidence cannot be supplied by reading into a statement that—you do not look for the location of the facial nerve in the performance of the operation; that it is important that you avoid striking the nerve; that you locate the antrum—a meaning that some important surgical guidepost was carelessly disregarded. The evidence bearing upon the conduct of the operation and the succeeding manifesta-

tions of the diseased condition does not warrant the conclusion that malpractice was present.

The most that can be said is that the evidence offered by the plaintiff leaves the cause of the injury to speculation and conjecture, while defendant's evidence shows the exercise by him of the proper degree of care and skill in the treatment of the plaintiff. Inasmuch as the evidence does not sustain a finding of negligence, defendant was entitled to a dismissal of the action, and it is unnecessary to consider plaintiff's assignment of error or defendant's contention that the failure to give notice within two years from the injury prevented the commencement of an action.

*By the Court.*—Judgment affirmed.