**LONE STAR GAS CO. v. LAZZARA.**

No. 14241.

Court of Civil Appeals of Texas. Fort Worth.

May 23, 1941.

Rehearing Denied June 27, 1941.

Walker, Smith & Shannon and Kelly Shannon, all of Fort Worth, and Thompson, Knight, Harris, Wright & Weisberg, Adair Rembert, and Sol Goodell, all of Dallas, for appellant.

Jim Gaddy Norris and Scott Daly, both of Fort Worth, for appellee.

McDONALD, Chief Justice.

Plaintiff sued defendant for injuries claimed to have resulted from inhaling carbon monoxide gas. Plaintiff recovered judgment in the trial court, and defendant has appealed. The parties will be designated as they were in the trial court.

On December 7th, 1937, plaintiff was engaged in cooking for a church supper,

on a gas range located in the basement of the First Baptist Church, in the City of Fort Worth. This church was at that time equipped with sixty or more appliances using natural gas. The gas was supplied through a regulator, furnished and maintained by defendant, the purpose of which was to create a uniform gas pressure as various of the appliances were turned on or off. The theory of liability sought to be established by plaintiff's pleadings and proof was that defendant was negligent in furnishing and maintaining a regulator which was too small to regulate the volume of gas used by the appliances in the church. Although defendant insists that the proof shows that plaintiff was suffering from food poisoning, and not from carbon monoxide poisoning, we think there is sufficient evidence to support the finding of the jury that plaintiff's injuries were caused by the latter.

The record shows that the regulator in question was installed in 1931, at a time when there were sixteen appliances in the church. The capacity of the original sixteen appliances is not shown, although there is some suggestion from the testimony offered by plaintiff that the average capacity of the appliances then and later used was about thirty cubic feet of gas per hour. The capacity of the regulator in question was from 500 to 750 feet per hour.

Plaintiff's evidence is to the effect that she entered the basement of the church, where the kitchen was located, about one o'clock in the afternoon of December 7th, 1937; that at that time seventeen appliances were burning, including the three cooking ranges in the kitchen; that about two or three o'clock in the afternoon two or three of the appliances were turned off; that about four o'clock plaintiff began cooking over the gas range; that about six o'clock six of the appliances were turned of, leaving eight still burning; that plaintiff finished cooking between six and seven o'clock; that about five-thirty or six o'clock plaintiff began to suffer a severe headache; that about seven-thirty she became so ill she fainted and had to be taken home. No other person present at the church suffered from any gas poisoning.

From tests later made by Mortimer Jones testifying as an expert on behalf of plaintiff, the jury would have been warranted in believing that the regulator was too small to regulate the pressure properly when all of the sixty or more appliances in the church were on, or when enough of them were on to consume more than 500 to 750 cubic feet of gas per hour. There is no testimony to show that the regulator would not properly regulate the pressure so long as not more than 500 to 750 feet per hour was being consumed.

In the first place, we doubt if the proof is sufficient to establish negligence on the part of defendant in failing to supply a larger regulator. There is no proof that the regulator was too small to handle the amount of gas consumed by the sixteen appliances which were in the church when the regulator was installed in 1931; nor is there any proof that defendant knew, or should have known, of the increase in the number of appliances. See Lone Star Gas Co. v. Eckel, Tex.Civ.App., 110 S.W.2d 936, and cases therein cited.

In the second place, even if defendant was negligent in the respect just mentioned, it would not be liable unless its negligence was a proximate cause of plaintiff's injuries. If the volume of gas being consumed by the appliances which were actually burning on the afternoon of December 7th was within the capacity of the regulator, then the size of the regulator could not have been the proximate cause of the production of carbon monoxide gas by the range over which plaintiff was cooking. From the testimony offered by plaintiff, not more than fourteen or fifteen of the appliances were burning at the time she began cooking. The volume of gas being used by those appliances is not shown, hence it cannot be known whether it exceeded the admitted capacity of the regulator or not. The only proof touching upon the question of the volume of gas being used at the time is the suggestion, above mentioned, that the average consumption of the appliances was about thirty feet per hour. If this average be considered, mathematical calculation would reveal that the capacity of the regulator was not then being exceeded.

Mr. Jones, in answer to a hypothetical question, undertook to express an opinion to the effect that cutting off the six appliances about six o'clock caused the carbon monoxide gas to be produced, but upon cross-examination with respect to the question, said that he did not know the capacity of the appliances referred to in the hypothetical question. Thus his answer to the question could not have been

based upon any state of known or assumed facts, and cannot have any probative value.

Mr. Jones testified that an improper adjustment of the appliance itself would result in the production of carbon monoxide gas. No tests or examinations were made of the range, or of any of the other appliances, to determine whether they were properly adjusted. No tests were made by turning on the seventeen appliances which were burning at the beginning of the afternoon, and then cutting some of them off as they were cut off on December 7th. In other words, no tests were made under conditions similar to those existing on the afternoon of December 7th. Tests later made did show a fluctuation of pressure which Mr. Jones described as dangerous and which he said would cause carbon monoxide gas to be produced, but in none of the tests did Mr. Jones ascertain the volume of gas being consumed at the time of his tests.

Plaintiff cites Lone Star Gas Co. v. Bradford, 147 S.W.2d 547, a recent case by this court. But in the Bradford case the proof showed that the production of carbon monoxide gas resulted from an improper adjustment of the appliance. Mr. Mortimer Jones testified in the Bradford case; and there, as in the present case, he testified that improper adjustment of the appliance would cause carbon monoxide gas to be produced. In the present case plaintiff does not charge that the appliance was improperly adjusted through any fault of the defendant, as was done in the Bradford case, but relies solely upon the charge that the regulator was too small. It seems elemental to us that, to make out a case under this latter theory, plaintiff would be under the burden of offering proof that the capacity of the regulator was being exceeded during the afternoon of December 7th. This she failed to do. The fact that the capacity of the regulator may have been exceeded during the times when Mr. Jones made his tests, or at any other time, would be immaterial, and could not be the proximate cause of plaintiff's injuries. Under plaintiff's pleadings, there would be no liability on the part of defendant if a maladjustment of the appliance, or any other factor except the small size of the regulator, caused the production of the carbon monoxide gas.

Defendant complains of the form of certain of the issues submitted to the jury, on the ground that the inquiries con-

tained in them are not supported by the pleadings, and are not limited to the time when plaintiff alleged she received her injuries. Since the case must be reversed because of the insufficiency of the evidence, we do not consider it necessary to discuss the form of the issues complained of, further than to say we believe they are subject to the criticism mentioned.

The judgment of the trial court is reversed, and the cause is remanded for another trial.