No. 18,467.

JOSEPH J. DANDREA *v.* BOARD OF COUNTY COMMISSIONERS OF EL PASO COUNTY.
(356 P. [2d] 893)

Decided October 31, 1960

Messrs. FOARD, FOARD & McCARTY, for plaintiff in error.

Mr. NORMAN E. WALTON, Mr. LEON H. SNYDER, Mr. ROBERT H. LA GRANGE, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE FRANTZ.

DANDREA seeks reversal of a judgment of the trial court awarding him nominal damages in the sum of $10.00 on his second claim for relief. He urges only one ground for reversal, to-wit: "It was error for the lower court to award only nominal damages on plaintiff in error's second claim for relief inasmuch as the evidence of plaintiff in error was based upon the proper measure of damages."

Four claims for relief were set forth in the complaint. We are only concerned with the second claim, since the adverse disposition of the first, third and fourth claims is not challenged by this writ of error. By his

second claim Dandrea sought to recover damages in the sum of $100,000.00, alleged to have resulted from a change in the grade of a road adjacent to plaintiff's land.

Since the year 1886 the 8th Street Cutoff had been a public county road, and as originally existing followed the center of a section line southerly from the city limits of Colorado Springs for a short distance and then swung easterly from the section line to follow a natural grade. Dandrea had for a number of years owned land lying east of and abutting on a portion of said 8th Street Cutoff. In the year 1955 the road was rebuilt.

Prior to the rebuilding, various interested parties had requested the county to relocate and rebuild the road along the center line of the. section to a point beyond the south boundary of plaintiff's property. The evidence discloses that the county seriously considered these requests, and had it acceded to them the reconstructed road and its traffic would have been diverted away from a substantial portion of the plaintiff's property and the business establishments located thereon.

To countervail these requests for relocation, plaintiff offered to give the county as much of his land as would be needed for the rebuilding, if the road would be kept approximately in the then existing location. The county consented, and thereupon reconstructed the road along the location of the old road. In rebuilding, the grade was changed in several places, and in straightening out a portion of the road approximately ten feet of Dandrea's property was taken. Before the change in grade Dandrea's property had generally been below the highway.

The trial court found that access to Dandrea's property remained adequate and was not substantially affected by the reconstruction. It further found that raising the grade at various points had caused damage to Dandrea, but allowed only nominal damages because of the lack of "legal proof" as to such damages.

There were a number of buildings on Dandrea's property and he maintained that the change in grade had caused damage to these structures and further that it would be necessary for him to undertake a program of filling to bring the land to a level comparable to that existing prior to the change in grade.

His proof in support of this contention was based upon the replacement cost of the buildings affected less depreciation, and a cost of $1.30 per cubic yard for fill. The total cost of fill and restoration was estimated to be $93,950.00.

The expert who testified gave estimates as to each building. We quote a portion of his testimony:

"Q. Now, what was the purpose of this appraisal? A. Well it was to find, by estimation, an opinion of the damages, the resulting damages, through the reconstruction of these buildings and land fill due to the elevation of the new Eighth Street roadway. Q. In comparison with the old Eighth Street roadway? A. Well we did not compare it with any old road. We took it just as we found it. Q. Then your report does not reflect anything regarding difference in the fair market value between that land before the road was built and after the road was built, is that correct? A. Only on the assumption that — this is my assumption again, that whatever it would cost to restore the land to a more normal level would be a loss in market value. Q. What is a 'more normal level'? A. Well, a level that would approximate coming up to the level of the new highway. Q. Then you are assuming that the highway was level with these buildings prior to the new road being put there? It that correct? A. That could be an assumption. Q. Well, was it or not? A. Well, no, it was purely a thought on our part that we were taking it as we saw it, not knowing exactly what the old roadway was."

\* \* \*

"Q. Now, is it correct that in your appraisal any

valuation of land as is, as was, or as it will be, is not considered in your appraisal? You are considering only the cost of restoration? A. That is right."

 The quoted passages contain the nearest approach to the observance of the doctrine of before and after market value generally applied in cases involving damages to realty. Wrapped up in the opinion of damage was errant assumption (bringing the property back to the level of the highway), rendering it of no probative value. It is axiomatic that an opinion buttressed by assumed facts at variance with the actual facts has no evidential efficacy. *Wessel v. City of Lincoln,* 145 Neb. 357, 16 N.W. (2d) 476; *Lone Star Gas Co. v. Lazzara,* 152 S.W. (2d) 824 (Tex. Civ. App.); *Alberti v. Gordon,* 224 Wis. 439, 272 N.W. 352.

Moreover, whatever negligible import relating to the diminution of value could possibly be given this testimony, was wholly destroyed by the revelation obtained further by cross-examination of the witness. He testified that he "did not take any values." "If you look in my report you will see that I made a specific mention of that fact — that we were doing costs rather than values. In other words, we were trying to ascertain what it would cost to restore these buildings and the cost of restoring the land."

His testimony concluded, as evoked on cross-examination, as follows:

"Q. Mr. Brewer, what you are doing, is trying to make an estimate of restoring these buildings on the various basis which you state on the imaginary lot line and taking into consideration the present condition? A. That is what I was trying to do. Q. You did not make an appraisal showing the value of the land before and after? A. That is correct. Q. One more question, Mr. Brewer. As I understand it, all of your estimates in this appraisal are based upon your assumption that these various buildings which we have been talking about and to which you have testified, were up to the

level of the old road before the new road was constructed? A. That is a fair assumption."

Did the trial court err in holding that Dandrea had furnished "no legal proof of damages," and in consequence awarding him only nominal damages?

■ The time-tested measure of damages ordinarily applied to cases involving injury to property is the difference between the reasonable market value of the property before and after the impairment. *Boxberger v. Highway Comm.*, 126 Colo. 526, 251 P. (2d) 920; *Fenlon v. Western Light & Power Co.*, 74 Colo. 521, 223 Pac. 48; *Big Five Min. Co. v. Left Hand Ditch Co.*, 73 Colo. 545, 216 Pac. 719; *Hoover v. Shott*, 68 Colo. 385, 189 Pac. 848; *Farmers Res. & Irr. Co. v. Cooper*, 54 Colo. 402, 130 Pac. 1004; *Roberts v. Scurvin Ditch Co.*, 22 Colo. App. 120, 125 Pac. 552; *Denver, T. & Ft. W. R. Co. v. Dotson*, 20 Colo. 304, 38 Pac. 322; *Denver v. Bayer*, 7 Colo. 113, 2 Pac. 6.

This measure of damages has been held to apply to a city lot which was injured by change of the *established* grade of an adjoining street. *Denver v. Bonesteel*, 30 Colo. 107, 69 Pac. 595. See *Pueblo v. Bradley*, 23 Colo. App. 177, 128 Pac. 888; *Denver v. Vernia*, 8 Colo. 399, 8 Pac. 656. It should be here noted that the trial court in the present case dealt with a problem involving the change of an established grade of a highway adjacent to Dandrea's land.

As a general rule market value of land together with the improvements thereon relates to the whole rather than separately to the parts. *Farmers Res. & Irr Co. v. Cooper*, supra. See 1 Orgel on Valuation Under Eminent Domain, 290 et seq., §64.

■ Before the injured party may resort to a measure of damages other than before and after market value of the property, he should prove that the premises have no market value. *Holliday v. Dunn & Baker, Inc.*, 125 Ore. 144, 265 Pac. 1096. See *Johnson v. Board of County Comm'rs*, 138 Colo. 392, 336 P. (2d) 300, involving the destruction of a public bridge; *Big Five Mining Co. v.*

*Left Hand Ditch Co.,* supra, departing from the general rule because "mining claims have no market value, nor have mills thereon, or private roads thereto."

■ There should be no confusion between the measure of damages and evidence admissible to show damages. In those cases where elements of damages are admitted in evidence, such as the cost of restoration of property, estimates of replacement value, and other items, they are received only as they would have a bearing on and influence opinion as to value. *North Sterling Irr. Dist. v. Dickman,* 59 Colo. 169, 149 Pac. 97, Ann. Cas. 1916 D 973; *Farmers Res. & Irr. Co. v. Cooper,* supra; *Mustang Co. v. Hissman,* 49 Colo. 308, 112 Pac. 800; *Colorado M. Ry Co. v. Brown,* 15 Colo. 193, 25 Pac. 87; *Denver & R. G. Ry Co. v. Bourne,* 11 Colo. 59, 16 Pac. 839; *Denver v. Bayer,* supra; *Colo. Springs Rapid Trans. Co. v. Albrecht,* 22 Colo. App. 201, 123 Pac. 957.

"No personal inconvenience or annoyance, no interference with his trade or business, no decrease in the rental value of his premises occasioned by the construction or operating of the railroad, and no temporary interruption or damage thereby constitutes the test. None of these things can enter into the question, except as they may appropriately aid in determining the actual depreciation in market value of the realty and improvements." *Denver v. Bayer,* supra.

"No testimony whatever as to the value of the land, either before or after the injury, was introduced. The plaintiff, to establish his damage, undertook to show what it would reasonably cost to clear the land. This is not the true measure of damage. The true one, under the facts here shown, is embodied in the instruction asked by the defendant, and refused by the court. Such refusal was fatal error.

"It may be, and doubtless is, true that it would have been competent for plaintiff to have shown what the cost of clearing the land would reasonably be, as an element in assisting to determine the difference in the

value of the land just before and immediately after the flooding. It is, however, clear that the amount of damage cannot be fixed and settled by such method, without reference to the value of the land at the time of and after the happening. If the rule were as contended by plaintiff, it is manifest that, in some cases, the cost of removing rubbish and debris might be more than the value of the land before the injury, and more than its worth after clearing. There is nothing in the facts of this case to take it out of the general rule above set forth. * * * Otherwise stated, the reasonable cost of clearing the land is not the measure of damage, under the facts presented, but rather evidence to be considered, in connection with other circumstances in estimating the extent thereof." *Mustang Co. v. Hissman,* supra.

Viewed in the terms of the rules referred to we must hold that the trial court properly ruled that Dandrea had failed to establish measurable damages to his property by the proof offered. Estimates of replacement costs less depreciation and restoration of the land by fill were admissible if, and only if, they aided in arriving at market value before and after the change in grade. But in making his estimates, the witness expressly disavowed value as being involved or considered. And this was not a case in which, because of the circumstances, another formula to prove damages could be resorted to; it was not a case in which property without a market value had been injured.

Finding no error, the judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE DOYLE concur.