In the Matter of the Claim of Thomas D. HIGH (Deceased),

Marie L. HIGH, Petitioner,

v.

The INDUSTRIAL COMMISSION of the State of Colorado, the Director of the Industrial Commission of the State of Colorado, Cotter Corporation N.S.L., State of Colorado, Colorado Division of Mines, State Compensation Insurance Fund, and State of Colorado, Division of Labor, Subsequent Injury Fund, Respondents.

No. 81CA0170.

Colorado Court of Appeals, Div. I.

Sept. 3, 1981.

Rehearing Denied Oct. 8, 1981.

Certiorari Denied Dec. 21, 1981.

Traylor, Palo, Cowan & Arnold, Charles J. Traylor, Peter R. Black, Grand Junction, for petitioner.

J. D. MacFarlane, Atty. Gen., James C. Martin, Regional Asst. Atty. Gen., Grand Junction, for respondents Industrial Commission of the State of Colorado, the Director of the Industrial Commission of the State of Colorado, and the Division of Labor, Subsequent Injury Fund, State of Colorado.

James A. May and Richard G. Fisher, Denver, for respondents Cotter Corp. N. S. L. and State of Colorado, Colorado Division of Mines, and State Compensation Ins. Fund.

COYTE, Judge.

Marie L. High (claimant) initiated this claim for dependency benefits under the occupational disease provisions of the Colorado Workmen's Compensation Act after the death of her husband, Thomas D. High (decedent), from oat cell carcinoma of the lungs in December 1978. *See* §§ 8–41–108(3) and 8–51–112(2), C.R.S.1973 (1980 Cum.Supp.). She alleged that his death had been caused by exposure to radioactive materials and named as employers the Cotter Corporation and the State of Colorado, Bureau of Mines. The State Compensation Insurance Fund was named as insurer for both employers; the Subsequent Injury Fund has also been a party to this action throughout these proceedings. Claimant seeks review of the denial of her claim against the State as employer, the State Fund as insurer, and the Subsequent Injury Fund. We set aside the order.

The record reflects that for approximately 18 months prior to the diagnosis of cancer and his death three months later, decedent worked as a safety engineer for Cotter. From 1961 through 1976 he worked as a mine inspector for the State, and before 1961 he had worked for about 13 years in a uranium processing mill. The referee found, on supporting evidence, that decedent did not sustain an injurious radiation exposure while working for Cotter and dismissed it as a party to the action. The referee also found that decedent's cumulative exposure to radioactive materials while working for the State was at least 133.018 working level months, which he found to be an injurious exposure. He concluded that, therefore, decedent sustained his last injurious radiation exposure while employed by the State. These findings were adopted by the Commission and have not been challenged.

The following testimony was elicited relative to decedent's history of smoking. Claimant testified that decedent regularly smoked cigarettes until about 1963 except for a five-year period when he did not smoke. After 1963 decedent smoked a pipe and only an occasional cigarette. A co-worker, who worked closely with decedent in inspecting uranium mines for the State, testified with respect to decedent's pipe smoking, that he inhaled "part of the time" or "[o]n occasion" and estimated that three or four ounces of tobacco lasted him two days. Both witnesses stated that decedent "smoked at the pipe." Another co-worker at the State described decedent as a "moderate" smoker who smoked mostly a pipe which he had difficulty keeping lit. This witness did not know if decedent inhaled when smoking a pipe.

A medical doctor, recognized as an expert in epidemiology and radiological health, opined, based on decedent's work history and a compilation of his radiation exposure

while with the State, that "the radiation exposure probably led to his lung cancer." The doctor stated that in reaching this opinion he had considered that decedent stopped smoking about 17 years before he developed cancer but also that he understood that sometime after decedent stopped smoking cigarettes he had started smoking a pipe and did not smoke it "very intensely." On cross-examination the doctor elaborated on his opinion as follows: "If we assume [decedent] started smoking a pipe regularly in 1961 and he regularly inhaled the smoke from a pipe, which I find it difficult to believe, . . . his cancer [probably would] have resulted from the cigarette smoking and from the cigarette and pipe smoking."

The Commission affirmed the referee's denial of benefits based on claimant's failure to establish a causal relationship between decedent's radiation exposure and his lung cancer. In so doing, it noted the claimant's testimony that decedent "regularly smoked a pipe" after 1961 and the co-worker's testimony that he inhaled "on occasion" and used a four-ounce can of tobacco every two days. It concluded that the evidence "does not support a finding that the [decedent's] cancerous condition could be fairly traced to the employment as a proximate cause over and above the potential hazard the [decedent] willingly exposed himself to outside employment, specifically, the [decedent's] smoking."

In petitioning for review from the denial of her claim, claimant submitted sworn affidavits and letters purporting to correct and retract the co-worker's testimony as to the amount of tobacco decedent used and that he inhaled. She sought reversal of the Commission's order or a remand for further hearings. The Commission's final order affirmed its previous order without any reference to the material submitted.

In this review claimant contends, *inter alia*, that the Commission's conclusion linking decedent's cancer to his smoking has no support in the record because the only evidence relative thereto, the expert opinion, was not based on facts in the record. We agree.

Findings of the Commission based on conflicting evidence are binding on review if supported by substantial evidence. *American Metals Climax, Inc. v. Cisneros*, 195 Colo. 163, 576 P.2d 553 (1978). However, an expert opinion "buttressed by assumed facts at variance with the actual facts has no evidential efficacy," *Dandrea v. Board of County Commissioners*, 144 Colo. 343, 347, 356 P.2d 893, 895 (1960), and where that opinion is the only basis for the Commission's findings, a conclusion based thereon cannot stand. *See also Legouffe v. Industrial Commission*, Colo.App., 634 P.2d 1010 (1981).

Here, the expert opinion linking decedent's cancer to his smoking was carefully limited to the assumption that decedent regularly smoked a pipe and regularly inhaled when doing so. We agree with the claimant that there was no evidence that decedent regularly inhaled, and the Commission did not so find. Hence, this opinion cannot serve as the basis for the Commission's denial of benefits. Moreover, the opinion of the expert that related the cancer to decedent's employment was based on the evidence about his smoking which was elicited at the hearings.

Since we are reversing the Commission, we need not consider claimant's contention that we should remand to the Commission for further proceedings pursuant to § 8-53-111, C.R.S.1973, based on the affidavits she submitted prior to the issuance of the Commission's final order.

The order of the Commission is set aside and the cause remanded for the entry of an award.

STERNBERG and KIRSHBAUM, JJ., concur.