**CITY OF GUNNISON, Colorado, a home-rule municipality; and Board of County Commissioners of the County of Gunnison, Petitioners-Appellants,**

v.

**McCABE HEREFORD RANCH, INC., a Colorado corporation, Respondent-Appellee.**

No. 84CA0270.

Colorado Court of Appeals, Div. III.

May 30, 1985.

Roderick E. Landwehr, Gunnison, for petitioner-appellant City of Gunnison, Colo.

R.A. Santarelli, Gunnison, for petitioner-appellant Bd. of County Com'rs of the County of Gunnison.

Holley, Albertson & Polk, P.C., Dennis B. Polk, Golden, for respondent-appellee.

TURSI, Judge.

This is an eminent domain action in which the condemning authority, the City of Gunnison (city), appeals from a judgment in which the jury awarded $421,410 as compensation to McCabe Hereford Ranch, Inc., (McCabe) for the taking of 129.47 acres of its property in an unincorporated area of Gunnison County. We affirm.

In 1977 the city instituted eminent domain proceedings to obtain six acres of a 135.47 acre tract of land owned by McCabe in Gunnison County to be used for a sewer plant. Using July 14, 1980, as the taking date, the parties settled the dispute by a stipulation dated January 29, 1982, which provided that McCabe was to receive a total of $111,000 as compensation. This amount included $29,621 for the property taken and $81,379 for damages to the remaining 129.47 acres. The stipulation also stated that the value of this remainder was $328,785 prior to the taking on July 14, 1980, and $247,406 immediately thereafter.

The city then decided that it also needed a location for a sewer treatment facility and a recreational park. The best location was determined to be the remaining 129.47 acres still owned by McCabe. Later in 1982 the city instituted this condemnation action to secure that property.

Both parties made motions in limine concerning the use of the 1982 stipulation in these proceedings. Before the taking of testimony, the trial court ruled that evidence of the prior condemnation of McCabe's property was inadmissible in the present action.

## I.

The city first contends that the trial court erred by not allowing it to use the 1982 stipulation to impeach the testimony of Larry Pomeroy, the president of McCabe, in which he gave his personal estimate of the value of the property. At trial, Pomeroy estimated the value of the remaining 129.47 acre tract on the date of the second condemnation, July 1982, to be approximately $750,000, well above the $247,406 figure in the stipulation. The city sought to impeach his testimony by using the lower value contained in the stipulation. The city argues, that pursuant to CRE 613(a), the stipulation should have been admitted as a prior inconsistent statement of Pomeroy. We do not agree.

█ Admissibility of evidence, in the first instance, is to be determined by the trial court. CRE 104(a). And, the two statements are not inherently inconsistent because they were made in different contexts. *See Howell v. Cussons*, 29 Colo. App. 572, 489 P.2d 1056 (1971).

The valuation in the stipulation resulted from lengthy negotiations between McCabe and the city to reach a compromise settlement on reasonable compensation for the condemned property. Thus, the $247,406 figure does not represent Pomeroy's estimate of the value of the land for its highest and best use. It rather represents his acquiescence to a settlement in a contested action. Moreover, the two figures were formed in time frames two years apart and, thus, do not concern the same subject circumstances.

Accordingly, we conclude that the trial court did not abuse its discretion in holding that the stipulation was not admissible as a prior inconsistent statement. *See State Department of Highways v. Mahaffey*, 697 P.2d 773 (Colo.App.1984); *cert. granted on other grounds*, March 18, 1985.

## II.

The city next asserts that the trial court erred in allowing McCabe to put in evidence separate values of the land and the appurtenant water rights. We disagree.

McCabe presented evidence of the value of water rights through two experts. The first was a consulting engineer in water resources who testified that the value of the water rights appurtenant to the property was $28,000 based on his opinion of the estimated value of the water if it were transferred away from the property to another use. *See State Department of Highways v. Mahaffey, supra*. McCabe's second expert witness, a professional real estate appraiser, estimated the total value of the property and improvements at $438,585, exclusive of the water rights.

█ As a general rule, the existence of natural land assets such as mineral or water rights can be considered in determining how they enhance the fair market value of a condemned piece of property, but it is

not proper to evaluate such appurtenant rights separately. 4 P. Nichols, *Eminent Domain* §§ 13.2, 13.23 (1981); *Dandrea v. Board of County Commissioners,* 144 Colo. 343, 356 P.2d 893 (1960). However, a distinction is drawn between the measure of market value and evidence admissible to prove the market value. *Dandrea v. Board of County Commissioners, supra.* The jury may not return separate awards for land and improvements, but where it is established that the land was enhanced in value by reason of the improvements, evidence of the separate value of the land and improvements is admissible. *See State v. King Brothers Motel, Inc.,* 388 S.W.2d 522 (Mo.Ct.App.1965); *Wheeling Electric Co. v. Gist,* 154 W.Va. 69, 173 S.E.2d 336 (1970).

■ When an opponent's appraisal witness includes a particular factor in his estimate of the value of the property, a party is entitled to rebut that testimony by having its own expert testify as to a different value of that factor. *See City of Boulder v. Orchard Court Development Co.,* 527 P.2d 931 (Colo.App.1974) (not selected for official publication).

■ One of the city's appraisal experts, called by McCabe as an adverse witness, pursuant to C.R.C.P. 43(b), testified that his appraisal of $305,000 for the whole property included an estimate of the value of water rights for consumption and continuing agricultural use. The city's other expert appraiser estimated the property at $287,000, but testified that he did not attempt to value the water rights separately. Both of the city's witnesses testified that they considered the water rights to be valuable and that they took this factor into account to determine the property's overall value. Neither, however, was able to articulate the precise value of these rights. The water rights were a legitimate factor included as a basis for the appraisals by the city's experts. Accordingly, McCabe was entitled to present evidence as to their separate value.

## III.

■ Next, the city contends that the trial court should have allowed the city to elicit further testimony from its two appraisal witnesses regarding the earlier partial condemnation. Again, we disagree.

The jury's sole task was to determine the value of the property in July 1982. Although McCabe sought to impeach the 1982 appraisals of the city's experts by showing that they valued the property approximately 25 percent higher in 1980, both witnesses were allowed to explain that their lower 1982 appraisals were because of the sewer plant. It was not necessary to go into further detail on that point. No unfavorable inferences were created, and the trial court did not abuse its discretion in rejecting further evidence on this issue.

## IV.

■ The city finally contends that the jury verdict improperly compensated McCabe for the taking of the 129.47 acres at the 1980 market value of $3,000 per acre rather than 1982 market value. The city asserts that since it had already paid for the damages to the remainder caused by the first condemnation, it is being required to pay for those damages twice.

However, special interrogatories for the separate valuation of the land and improvements were not requested or given. Therefore, we are unable to verify the city's assertion, and to do so would necessitate improper speculation. Further, the evidence does not compel us to arrive at the city's conclusion that the $3,000 per acre figure was the 1980, rather than the 1982, market value. There is competent expert testimony in the record that the 1982 value of McCabe's land ranged from $2,250 to $3,500 per acre. In addition Larry Pomeroy estimated the value of the tract at $750,000. Thus, to sustain the city's contention would require us to speculate on the thought processes of the jury. This we cannot do.

The judgment is affirmed.

STERNBERG and METZGER, JJ., concur.