Mr. Justice Schauer
delivered the opinion of the Court.
This action was commenced in the trial court by Maurice Gidley and Pauline Gidley, as plaintiffs, against the City of Colorado Springs, a municipal corporation, and James Murray, the Commissioner of Public Works' of the city, as defendants. Maurice Gidley is now deceased.
The property involved was held in joint tenancy by the plaintiffs and the action is continued in the name of Pauline Gidley, the surviving joint tenant. At the close of plaintiffs’ evidence, the action was dismissed as to Murray, who is now deceased, and no effort has been made to continue the action against his estate.
*484 Pauline Gidley, as plaintiff, and the City of Colorado Springs, hereinafter sometimes referred to as the city, as defendant, are the only parties before this court. The writ of error is directed to a jury verdict in favor of defendant and the judgment entered thereon.
The property involved is part of a subdivision which was plotted as a part of El Paso County in December 1888, and annexed to the City of Colorado Springs on December 15, 1950. It is described as Lots 1 through 9 in Block 15 in Addition No. 1 to the Town of Roswell, in the City of Colorado Springs, commonly known as 2511 Tremont Street (which runs north and south), and 315, 317 and 321 West Harrison Street (which runs east and west). Plaintiffs’ property is located on the southeast corner of the intersection of the two streets, which streets had been used as public roads for many years. Plaintiffs’ residence at 2511 Tremont Street is situated at the southern end of the tract, facing west. Three rental apartments, a woodworking shop and four garages are located between their residence and the north boundary of their property.
Plaintiffs acquired title to the property on October 8, 1959. Their residence was constructed by predecessors in title in 1947, and they, at the same time, constructed a retaining wail and steps in front of the residence leading down to the then existing level of Tremont Street, the level of the street being some three feet below the lot level. The undisputed evidence is to the effect that this retaining wall and the steps extended some twelve feet out over the street right of way.
In August 1961, the city, acting through James Murray, commissioner of public works, under the direction of the city manager, reduced the over-all level of Tremont Street by approximately three feet. This reduction made a perpendicular cut within eight inches of the lower retaining wall in front of plaintiffs’ property, and also reduced the level of West Harrison Street to a point one foot below plaintiffs’ property line at the *485 east end and approximately three and one-half feet below their property line at the intersection of Tremont and West Harrison Streets. Maurice Gidley complained to Murray, and the latter then created a backslope adjacent to plaintiffs’ property, eliminating the dangerous sheer drop, and removed the retaining wall which was. in danger of falling into the street. Gidley constructed temporary steps in front of his home and the apartments in order to obtain access from the street.
In their complaint, as amended, plaintiffs set forth the above facts and alleged that the retaining wall referred to had been built to prevent erosion; that the action of the city had resulted in the destruction of the retaining wall and steps, had reduced the level of the streets, changed the previously existing grade thereof and removed the lateral support for their property, and that by the loss of access to their property, loss of lateral support and a diminution of the value of their property they had been damaged in the amount of $15,000. They further alleged that the acts of defendant and its servants had been negligently and carelessly done, were illegal and without appropriate authority, and constituted a taking of private property for public use without just compensation; that these actions were taken without giving plaintiffs prior notice, without the appointment of appraisers to assess damages or benefits, without attempting to agree with plaintiffs with reference thereto, and without paying or offering to pay plaintiffs’ damages.
In its answer, the city alleged that pavement was constructed prior to the time the property was annexed to the city and that the streets were not paved in conformity with the requirements and regulations of the city until sometime subsequent to the work complained of.
After admitting that it had lowered the grade of the two streets, had repaired them and had removed large quantities of earth, the city then alleged that such work *486 was necessary to establish proper grades and drainage, and that prior to that time no street grade had been established. It admitted that no appraisers had been appointed to assess damages or benefits, and that no attempt had been made to reach an agreement with plaintiffs with reference to these matters and that no offer, had been made to pay plaintiffs’ damages. It also alleged that the work done on the streets and the establishment of the grade were accomplished legally and with proper authority. It denied that the action of the city and its employees had been negligent or careless.
The case was tried to a jury which, by agreement of counsel, viewed the premises after all the evidence had been presented. The jury returned its verdict in favor of the city and judgment was entered on the verdict. A motion for a new trial was filed and denied, and the case is now before this court for final determination.
As grounds for reversal, plaintiffs argue as follows:
“A. The City did not and could not delegate to the Commissioner of Public Works or the City Engineer the legislative power to establish street grades.
“B. The City is liable for lowering the level of a street so as to interfere with the abutting owner’s right of access where the action is taken without prior hearing and without proper legislative approval for the establishment of a street grade.
“C. The court erred in giving, as its instruction on damages, an instruction which was internally contradictory and which invaded the province of the jury. * * *
In considering Argument A, plaintiffs present two questions for determination: (1) Was there an attempt to delegate to the city engineer or the commissioner of public works the authority to establish grades and change the level of streets, and (2), if such a delegation of powers was attempted, was it effective and legal?
Plaintiffs’ theory of the case is that the establishment of street grades and the authorization to make street *487 improvements is a matter of legislative discretion vested solely in the city council, and that such legislative powers cannot be delegated to the city engineer or to the commissioner of public works. The theory of the defendant city, which was adopted by the trial court, is that the proper officer of the city, acting pursuant to provisions of the charter, the city code and ordinances of the city, properly established an original grade adjacent to plaintiffs’ property, in accordance with proper guidelines provided by ordinances. The court applied the rule in such cases based upon its finding that the city would be liable to plaintiffs for damages resulting to their property only in the event that the established grade was unreasonable or was carelessly made.
It is conceded that there was no established grade on either Tremont or West Harrison Streets prior to the attempted establishment by Murray of the grade now questioned which resulted in the alleged damage to plaintiffs’ property. The question becomes important because some courts have held that when a street is cut down without establishment of a grade, the city is liable for the injury, if any, resulting to the abutting property owner. Tillotson v. Windsor Heights, 87 N.W.2d 21 (Iowa). We must determine whether the grade on the two streets in question was established in accordance with the provisions of the charter, the code and ordinances of the City of Colorado Springs.
The City of Colorado Springs is a municipal corporation, organized and existing as a home rule city. Section 6, Article XX, of the Constitution of the State of Colorado, provides, inter alia, that the charter and the ordinances passed pursuant thereto in matters of local and municipal concern shall supersede within the territorial limits any law of the state in conflict therewith.
It was the city engineer, acting under the instructions of the city manager, who did the work of which plaintiffs complain. The city clerk testified that the city council had at no time passed an ordinance specifically *488 establishing a grade for either Tremont or West Harrison Streets in the vicinity of plaintiffs’ property, and had had no occasion to consider the level of either street in that vicinity. It was proven, then, that the grade attempted to be established by the city engineer was the first grade ever attempted to be established by the city.
 Counsel for the city admitted during oral argument before this court that they now agree that the fixing of a street grade is a legislative function. This court has held that a city cannot delegate the authority to establish the grade of a sidewalk. Leadville v. McDonald, 67 Colo. 131, 186 Pac. 715. On the same theory, the city could not delegate the authority to establish the grade of a street which is a legislative function. Accordingly, we now hold that the delegation of authority to the city engineer to establish the grade of the two streets in question was void ab initio; his attempt to establish such a grade was unauthorized and of no effect. A grade for either Tremont Street or West Harrison Street has never been legally established, either “in the first instance” or at all.
Counsel argue that the applicability to the issues herein of Section 15, Article II of the Colorado constitution, which declares that private property shall not be taken or damaged for public or private use without just compensation. This court has pointed out that in Illinois and a majority of other states similar constitutional provisions have been adopted and a municipality has been held liable for consequential damages resulting from changes in a street grade, whether made for the first time or for a change from one established grade to another. Leiper v. Denver, 36 Colo. 110, 85 Pac. 849. An attempt is made to depart from this rule in several Colorado cases, all based upon the existence or nonexistence of a legally established grade in the first instance. In Leiper, supra, this court held that for reasonable, and carefully made, changes of a public street *489 grade from, the natural surface to a legally established grade in the first instance, a municipality is not liable to the abutting lot owner for consequential damages to his property, citing with approval Dillon on Municipal Corporations (4th ed.) as indicating that municipal liability should be limited to changes in established grades, and is not to be extended to reductions from the natural surface, except when such changes are unreasonable or carelessly made.
In City of Denver v. Bayer, 7 Colo. 113, 2 Pac. 6, this court stated that consequential damages might be held to be damnum absque injuria when occasioned by a reasonable improvement of a street by the proper authority. In City of Durango v. Luttrell, 18 Colo. 123, 31 Pac. 853, this court inferentially indicated that no liability for consequential damages to an abutting lot owner resulted from a reasonable improvement of the street by the authority of the city. And, in Pueblo v. Strait, 20 Colo. 13, 36 Pac. 789, it was held that an abutting property owner cannot recover for injuries resulting from reasonable or ordinary or usual changes and improvement of a street by the municipality.
The difficulty in applying most of the previous rulings of this court to the facts in this case arises because no grade had ever been legally established by the instrumentality having the legislative power to do so.
In relying upon the provisions of the charter, ordinances and code, the city argues specifically that Article XX of the charter creates the department of public works and that Article IX provides that the commissioner of public works shall have the supervision and control of all streets, public works, ways, etc., except as otherwise provided in the charter.
The city also contends that the provisions of the code, when considered with the charter, empower the city manager to take charge of the entire erection of all street improvements. It is contended, further, that the *490 city engineer is empowered to set the alignment and grade for curb, gutter, sidewalks, and other improvements on streets, alleys, and other public ways.
In summary, the city relies upon a proper delegation of power which has been granted by the charter, ordinances and code.
We are unable to accept the position of the city. The charter of the city requires that legislative powers be exclusively vested in and exercised by a city council unless otherwise provided therein. In Leadville v. McDonald, 67 Colo. 131, 186 Pac. 715, the following pertinent language appears:
«* * * 3£1^ many cases, expressed in various language, it is the judgment and discretion of the council that is required, and though they may delegate all ministerial power such as surveying, investigation and computation, and may take the advice of attorneys, engineers and others, the final determination must be by the council itself. They may lay out a general plan and delegate to agents the power to carry it out, and they may have agents make a plan which they afterwards adopt, but the legislative act must be theirs.”
There is no exception set forth in the charter to delegate this legislative power. The code, which is relied upon by the city, provides in Section 34-86, inter alia, that lines or grades are to be established by the city council. The delegation involved in this case goes principally to supervision and controls, as opposed to original establishment of a grade.
We hold, therefore, that in the instant case there was an unlawful attempt to delegate authority to establish grades which was without legal sanction and therefore ineffective.
The judgment is reversed and the cause remanded to the trial court for further proceedings to determine what damages, if any, plaintiffs may have suffered due to the illegal establishment of the grade in dispute. No *491 award, however, is to be made for plaintiffs’ wall, steps and yard, which were on the city’s right of way.
Mr. Justice McWilliams and Mr. Justice Pringle dissent.