## No. C-239

City of Cherry Hills Village, a municipal corporation, Jean I. Braught, its Building Inspector, Elizabeth N. Noel, its Clerk, Guy H. Williams, Jr., its Mayor, and Ned M. Steele, Milford H. Brinkerhoff, George B. Lee, Robert I. St. Clair, Lavon S. Hill, and James W. Manning, individually and collectively as members of the City Council of the City of Cherry Hills Village, and collectively being the City Council of said municipality v. Trans-Robles Corporation, a California corporation, and Continental Mortgage Investors, a Massachusetts Business Trust

(509 P.2d 797)

Decided May 7, 1973.

Berge, Martin and Clark, Bruce D. Pringle, for petitioners.

Gorsuch, Kirgis, Campbell, Walker and Grover, Richard B. Harvey, for respondents.

MR. JUSTICE KELLEY delivered the opinion of the Court.

We granted certiorari to review the decision of the Court of Appeals in *Trans-Robles Corporation v. City of Cherry Hills Village,* 30 Colo.App. 511, 497 P.2d 335 (1972), which affirmed a judgment of the trial court declaring a zoning ordinance invalid insofar as Trans-Robles' land is concerned. The jurisdiction of this court was invoked on the grounds that (1) the Court of Appeals had decided a question of substance in a way probably not in accord with the applicable decisions of this court, and (2) because the constitutionality of an exercise of the City's power to enact a zoning ordinance for the health, safety, and welfare of its residents is involved; hence, the case is said to present issues of general public interest which should be decided by this court.

The facts which are summarized under Part I of the Court of Appeals opinion will not be repeated here.

In this action Trans-Robles is challenging the constitutionality of Ordinance No. 15, Series 1967, of the City of Cherry Hills Village as it applies to Trans-Robles' land. Prior to the 1967 annexation by the City, the property in question had been zoned residential since 1940 by Arapahoe County with a minimum lot size requirement of one-half acre.

Prior to annexation, the area in question was platted into sites of approximately one-half acre as permitted by the county zoning resolution in effect at that time. In order to demonstrate the extent to which the area had been improved in reliance on the one-half acre zoning, we turn to the findings of the trial court.

"11. As of or prior to August 28, 1967, date of zoning change of a portion of the Cherry Dale Subdivision lots to R-1 requiring two and one-half acre minimum building sites, the following additional circumstances existed, not hereinabove previously stated:

"(a) Through a series of contractual arrangements among and between the City and County of Denver, the Hillcrest Water & Sanitation District, and the Mansfield Heights Water & Sanitation District (which provides the Cherry Dale Subdivisions with sewer service; RN # P), sewer service was legally capable of being provided to the Cherry Dale Subdivisions, after November 30, 1966, by means of gravity flow outfall lines to a lift station, which then lifted the sewage uphill into lines of the Mansfield Heights District, ultimately flowing into the Denver sewer system by gravity flow. One of the agreements (October 1, 1966) was entered into between Plaintiff Continental, in its own name, and Mansfield Heights District.

"(b) Although the certified record of proceedings is inadequate to allow precise determination of the exact dollar amount of site improvements, and the exact timing thereof, the record does show that by the time of the August 21, 1967 public hearing (transcript, RN # L), Continental and Trans-Robles, and their predecessors in title, had put in water and sewer to each property line and installed underground utilities (page 54, transcript); street paving had been accomplished or largely accomplished (page 56); curbs and gutters were installed (page 48); and, according to the City's Planning Consultant addressing the Defendant City Council at the public hearing of August 21, 1967, 'street and utility improvements have been made in this area, and it was reported to the Commission that these improvements, partic-

ularly sewage disposal, met the requirements imposed by Arapahoe County' (page 7)."

. . . .

"15. Examination of the Cherry Dale subdivision plats, a comparison of the dimensions shown thereon with the requirements for lot areas of not less than two and one-half acres, and consideration of required set back and floor areas, as required by the above quotations from Ordinance No. 7, Series of 1956, shows the following:

"(a) The zone R-1 demands a lot area of 108,900 square feet (43,560 square feet in an acre, times 2.5 acres, equals 108,900 square feet). While a lot could legally be of any particular shape, for example a lot with a depth of 150 feet would have to have a width of 726 feet in order to produce 108,900 square feet.

"(b) Some of the lots (in the area rezoned to two and one-half acres) have a depth of only 150 feet (see lots one through 5, Cherry Dale (RN # D), indicating that the width would in fact have to be the above stated 726 feet.

"(c) When the requirements of Ordinance No. 7, Series of 1956, relative to building setback of 100 feet from any street line and 50 feet from any non-street property line, are coupled with the ordinance requirement of an 1800 square foot minimum floor area for a single family residence improvement, and the Cherry Dale Subdivision plats are examined, the evidence becomes clear and convincing that no rational system of lots, with such dimensions and square footage requirements, could be laid out on the rezoned property utilizing the then existing system of streets, curbs, gutters and underground utilities and water and sewer collection systems, nor could any reasonable combination of lots be put together allowing construction of a house of the required area with the proper setbacks."

 The City does not quarrel with the rule of law invoked by the Court of Appeals that a zoning ordinance is unconstitutional if it deprives the property owner of any reasonable use to which his land may be put. *Bird v. City of Colorado Springs,* 176 Colo. 32, 489 P.2d 324 (1971); *Baum*

*v. City and County of Denver,* 147 Colo. 104, 363 P.2d 688 (1961). Nor does the City disagree with the trial court's finding that the developers could not use the streets and utility services which had been installed, except in connection with the one-half acre zoning.

It is one of the City's principal contentions here that the record fails to disclose sufficient facts to establish that the developers had acquired a *vested right* prior to the new ordinance. We do not regard this argument as applicable to the facts and circumstances of this case.

■ The ultimate issue in this case is whether Ordinance No. 15, Series 1967, is unconstitutional as it applies to the Trans-Robles ground. If the two and one-half acre zoning, as found by the trial court, would foreclose any reasonable use of the property, then it would be confiscatory. The trial court made extensive findings of fact, only a few of which are set out above, which supported its conclusion that such was the case. Our examination of the record discloses ample evidence to support those findings.

■ The issue of confiscation is one of fact. The trial court having found that issue adversely to the City and there being ample evidence to support the finding, we must affirm.

Judgment affirmed.

MR. CHIEF JUSTICE PRINGLE, MR. JUSTICE DAY, and MR. JUSTICE GROVES do not participate.