Donald OBERNDORF, et al., Plaintiffs,

v.

The CITY AND COUNTY OF DENVER, et al., Defendants.

Civ. A. Nos. 86–K–1075, 86–K–1278 and 86–K–1445.

United States District Court, D. Colorado.

Oct. 29, 1986.

Order on Motion for Reconsideration Jan. 27, 1987.

Harold A. Feder, Feder, Morris & Tamblyn, James A. Clark, Bruce D. Pringle, Baker & Hostetler, Vicki J. Fowler, Malcolm Murray, Gorsuch, Kirgis, Campbell, Walker and Grover, Denver, Colo. and Richard G. Carlisle, Robert H. Freilich, Kansas City, Mo., for plaintiffs.

Stephen H. Kaplan, City Atty., Donald E. Wilson, Joel Kohn, Daniel B. Slattery, Asst. City Attys., Denver, Colo., for The City and County of Denver, The City Council of the City and County of Denver, and Federico Pena, Mayor.

Marlin D. Opperman, William M. Schell, Opperman & Associates, Denver, Colo., for Denver Urban Renewal Authority.

Dale R. Harris, David R. Hammond, Davis, Graham & Stubbs, Denver, Colo., for BCE Development Properties, Inc.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

### I.

This case (86–K–1075) has been consolidated with two other cases: 86–K–1278, and 86–K–1445. The list of plaintiffs and defendants follows.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| (1075) | — THE CITY AND COUNTY OF DENVER, |
| — DONALD OBERNDORF, | |
| — LEO STERN, | — THE CITY COUNCIL OF THE CITY AND COUNTY OF DENVER, by and through its council members, |
| — HARRY PAUL WERTHEIMER, | |
| — MIKE SMITH, Admin. for Edith O. Wertheimer Trust | |
| — DOTTIE HAMMEL, | — THE DENVER URBAN RENEWAL AUTHORITY, |
| (1278) | — FEDERICO PENA, as Mayor of The City of Denver, |
| — LEONORE COOK, | |
| — ROBERT E. COOK, Trustee of J.R. Cook Irrevocable Trust, | — BCE DEVELOPMENT PROPERTIES, INC., a Colorado Corp., f/k/a, Oxford Properties, Inc. |
| — BARBARA COOK & GARY R. COOK, Trustees of TDG Cook Trust, | |
| — BARBARA COOK & GARY. R. COOK, Trustees of J. Cook Residuary Trust, | |
| (1445) | |
| — BLOCK 173 ASSOCIATES, a Colorado General Partnership. | |

There are three motions to dismiss filed by all defendants. The first is by BCE Development Properties, Inc., f/k/a Oxford Properties, Inc.; the second is by The City of Denver, the City Council of Denver, and Mayor Pena; and, the third is by the Denver Urban Renewal Authority. Each group of defendants has filed individual responses to these motions and defendants have submitted their respective replies to those responses. Since most of the arguments in all the various motions, responses, and replies are, very often, redundant (hence, the reason for consolidation in the first place) I have organized the discussion according to the significant issues.

### II.

This is an action for declaratory and injunctive relief and damages. Plaintiffs argue a proposed urban renewal plan, approved by the city, constitutes an unconstitutional taking of their property and it damages and interferes with their property rights in violation of the due process clause of the Fifth Amendment, and the due process clause and equal protection clause of the Fourteenth Amendment. Plaintiffs also argue the plan violates the antitrust laws of the United States. In support thereof, plaintiffs allege the urban renewal plan misrepresents the area to be redeveloped as "blighted" and therefore permits the condemnation of their property to the benefit of defendant developer, BCED.

### PLAINTIFFS' ALLEGATIONS

In December, 1984, BCED announced plans to develop a retail and office center on a two block area comprised of Block 173 and Block 196 (Block 206 was added in 1986) in downtown Denver called the Centerstone Blocks. BCED stated the project would not be economically feasible without direct public subsidies or tax breaks. Plaintiffs allege that because BCED could not raise enough funds pursuant to the Colorado Urban Renewal Laws or through private means, it, with the help of DURA and the municipal defendants, sought to circumvent the Colorado Urban Renewal Laws by condemning the Centerstone Blocks as a "blighted" or "slum" area. Plaintiffs assert their property is not a "blighted" or "slum" area within the meaning of the statute and further that even if the property were blighted, the BCED project was not a means for the elimination or prevention of the development or spread of blight in accordance with the Urban Renewal Plan.

On February 6 and 10, 1986, respectively, DURA and the municipal defendants arranged for a blight study of the Centerstone Blocks. The study was received and an urban renewal plan prepared, however, plaintiffs allege the plan was neither prepared nor approved by DURA. Plaintiffs further allege that in the four years preceding this action, BCED negotiated and

acquired property in the Centerstone Blocks but never was successful in obtaining certain properties in the Centerstone Blocks, including plaintiffs' property. Accordingly, BCED sought to use the extraordinary powers of eminent domain under the Colorado Urban Renewal law whereby the "needed" properties would be condemned. Plaintiffs allege the instances of poor or substandard conditions designated in the blight survey are readily correctable by enforcement of existing city ordinances. Defendants, nevertheless, intend to condemn plaintiffs property, thus, taking private property for private purposes.

### III.

### MOTIONS TO DISMISS

There are four basic arguments in this case supporting the motions to dismiss: (1) plaintiffs' civil rights claims fail to state a claim upon which relief can be granted; (2) plaintiffs' antitrust claims fail to state a cause of action; (3) plaintiffs' claims are not ripe for adjudication, and, (4) injunctive relief is not appropriate because plaintiffs have an adequate remedy at law. Finally, there is a suggestion to abstain until the state law claims are decided by Colorado state courts.

**(1) PLAINTIFFS' CIVIL RIGHTS CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

A. Lack of Due Process.

■ Defendants argue plaintiffs have not been deprived of property without due process of law because there are adequate state remedies to redress the claimed deprivations. "The Fourteenth Amendment does not protect against all deprivations of property, only against deprivations without due process of law." *Atkinson v. City of Fort Collins*, 583 F.Supp. 567 (D.Colo.1984) (J. Moore).

Plaintiffs contend defendants' equation of a taking with condemnation ignores cases which have "stated that unreasonable government regulation may constitute

a taking in some instances ... [T]he general rule is that while property may be regulated to a certain extent, if the regulation goes too far it will be recognized as a taking." *Upah v. Thornton Development Authority*, 632 F.Supp. 1279, 1280–81.

Also plaintiffs are not attacking the Colorado Urban Renewal Law as unconstitutional, they are instead asserting defendants' actions lacked due process because the actions do not comport with the statute or existing common law.

*Upah, supra,* involved government regulation such as rezoning the land and resubdividing the properties without plaintiff's authorization, creating a special improvement district affecting the land, amending the Urban Renewal Plan without giving notice to the plaintiff, etc., which involve violations amounting to much more than mere questionable condemnation proceedings. Moreover, there is a state law remedy to contest a condemnation proceeding. *Dunham v. Golden*, 31 Colo.App. 433, 504 P.2d 360 (1972). However, plaintiffs assert there is more here than a mere contention with a condemnation proceeding. They are asserting there was and is a conspiracy which violates their due process and equal protection rights and the condemnation proceeding is the tool by which defendants are injuring plaintiffs. That is to say, the condemnation proceeding is part of the conspiracy. As I stated in *Upah:*

> I am well aware that "[c]laims based merely upon 'assumed potential invasions' of rights are not enough to warrant judicial intervention" ... In the present case, however, plaintiff's allegations do not rest on the outcome of the condemnation action. Rather, plaintiff has asserted claims based on actions which defendants have allegedly already taken and which purportedly violate plaintiff's rights.

*Id.,* at 1281.

Thus, the motion is denied with respect to this argument.

B. Just Compensation.

■ Defendants also argue there has been no denial of substantive due process

because as long as just compensation is paid, a decision to condemn property for public use is valid. *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 2329, 81 L.Ed.2d 186 (1984). They also cite my recent decision in *Thornton Development Authority v. Upah*, 640 F.Supp. 1071, 1076, 1081 (D.Colo.1986) where I stated so long as a statutorily recognized public purpose is the stated basis for an urban renewal authority's action, it is valid, even if it results in advantage to one entrepreneur, and disadvantage to another. Defendants assert any "underlying motive" is irrelevant as long as a rational basis exists.

Plaintiffs concede claims pursuant to 42 U.S.C. § 1983 seeking just compensation for a taking of property are not ripe for adjudication until the owner has sought such compensation by way of a state inverse condemnation action. (Block 173 Associates brief, p. 12). However, they claim this is not applicable to the instant case.

They are *not* seeking just compensation. Instead, they seek money damages for defendants' interference with their property rights through a series of invalid and fraudulent actions taken in bad faith under color of state law. They also request injunctive relief to free plaintiffs' property from adverse impact of defendants' actions.

In fact, if plaintiffs seek just compensation through inverse condemnation proceedings, then the objective, which defendants' conspiracy was designed to achieve, would be realized.

This last point is key. If plaintiffs now execute their state law remedy, as defendants suggest, then they would be playing right into the scheme defendants have allegedly constructed. There are no further steps available to plaintiffs which might relieve them of the burdens created by the Urban Renewal Plan.

C. Equal Protection of the Laws (§§ 1983 and 1985).

▮ Defendants argue plaintiffs have not been deprived of equal protection under the laws since there has been no allegation of discrimination against a suspect class (race). Plaintiffs' only allegation is that their land is subject to a proposed condemnation while other peoples' land is not. This is simply insufficient.

I explicitly held in *Upah, supra,* that a § 1982 and a § 1985 action require "a racial or perhaps other class-based, invidiously discriminatory animus underlying defendants' actions." I dismissed these claims because there was no such invidiously discriminatory animus.

Regarding the § 1983 claim, I stated in *Upah:*

defendant's motion is denied, however, with respect to plaintiff's § 1983 claim *since there is no requirement of discrimination necessary to maintain such a cause of action.* (emphasis added).

Obviously, the § 1983 action cannot be dismissed for lack of racial animus, however, the § 1985 claim must be dismissed for that reason. The Oberndorf plaintiffs (1075) concede this point and withdraw their § 1985 claim but not their § 1983 claim.

(2) PLAINTIFFS' ANTITRUST CLAIMS FAIL TO STATE A CAUSE OF ACTION

A. No Standing to Bring Suit and No "Antitrust Injury".

▮ Defendants argue plaintiffs have no standing to bring an antitrust action because their injury (loss of control of real estate) is not a direct cognizable injury under the antitrust laws. The alleged injury is merely incidental to activities that are intended to be protected by the antitrust laws. Defendants cite *Central National Bank v. Rainbolt*, 720 F.2d 1183 (10th Cir. 1983) which held the ouster of a bank chairman resulting in the loss of bank ownership and control may have been an injury, but not one with sufficient standing under the antitrust laws because the injury *was not the result of any lessening of competition.*

Defendants also argue that even assuming there was an injury, it is not the type of injury the antitrust laws were intended to forestall. Defendants are attempting to condemn plaintiffs land through legal means. If any injury has resulted, it is because of the condemnation and not because of any lessening of competition or any other antitrust violation. The same "injury" would occur even if there were no alleged "anticompetitive conspiracy" among defendants. If plaintiffs have been injured, it is only because "[c]ondemnation for urban renewal purposes is a constitutional limitation on the exercise of property rights," *Thornton v. Upah, supra*, at 1081, and not because of any antitrust violation.

Plaintiffs argue the results of defendants' actions—elimination of competition among buyers and developers in the real estate market in a three block area of downtown Denver—has injured plaintiffs. Before defendants executed their scheme, there was competition among buyers of plaintiffs' property and competition among developers to develop such properties. Now, only DURA is a potential buyer, and BCED a potential developer.

It will be extremely difficult for plaintiffs to prove a conspiracy existed and that the three block area in downtown Denver is the "relevant market" for purposes of assessing whether the defendants constitute a monopoly. Notwithstanding these observations, the claim should not be dismissed for a lack of standing. Defendants have attempted, unsuccessfully, to construct a semantic difference between "condemnation of a certain property" and "elimination of competition to purchase a certain property", which, for antitrust purposes, is meaningless.

If plaintiffs can prove a conspiracy among defendants to monopolize and that the condemnation action was part of the monopolization scheme, then a definite antitrust injury would have occurred. There are a vast number a means by which to eliminate competition aside from price-fixing. The key is the effect the alleged action has on competition, not the means

sought to lessen it. Plaintiffs antitrust claims may fail for other reasons but should not fail for a lack of standing.

That the "same injury" would occur even if defendants did not conspire and merely pursued an urban renewal plan in good faith is not relevant because the antitrust laws are invoked to forestall certain behavior. For example, every day businesses are "injured" by market activity, government decisions, and general economic policy decisions. Standing, however, to sue for such injuries can only be invoked when such injuries are the result of a violation of the antitrust laws. Conspiracy to monopolize a real estate market is just such a violation.

### B. The *Parker* Doctrine.

■ Defendants argue that *Parker v. Brown*, 317 U.S. 341, 351–352, 63 S.Ct. 307, 313–14, 87 L.Ed. 315 (1943) held that state endorsed activities are immune from federal antitrust scrutiny even if anticompetitive. Also, *Town of Halle v. City of Eau Claire*, 471 U.S. 34, 105 S.Ct. 1713, 1719, 85 L.Ed.2d 24 (1985) held a municipality's anticompetitive activities that are authorized by a "clearly articulated and affirmatively expressed" state policy, are immune from antitrust actions. This includes private developers who act in concert and pursuant to the municipality's plan. *Cine 42nd Street Theater Group Corp. v. Nedelander Organization, Inc.*, 790 F.2d 1032 (2nd Cir.1986) (confers immunity on private third parties acting in concert with a municipality).

Plaintiffs assert the *Parker* doctrine does not apply to the facts of this case because plaintiffs are alleging *more* than the legitimate exercise of state urban renewal laws. They are alleging an *abuse* of those laws. The allegations of this abuse are the adoption of a "sham" redevelopment plan, the failure to follow mandated competitive bidding requirements, and a conspiracy between a private developer and city officials and the City of Denver deliberately to misuse the state urban renewal laws in order to injure competition. Specifically, defendants conspired to have plaintiffs' property designated as a blighted

**310**

area, although the property is neither blighted nor a slum area, so that a predetermined developer could acquire, through eminent domain, property which the developer had not been able to acquire through negotiation.

■ Given these allegations, defendants' motion with respect to this argument is denied. A state agency's action is reviewable if the state legislation authorizing the state action did not contemplate use of that authorization to promote city or state officials' own interest and personal economic benefit. *City of Lafayette v. Louisiana Light & Power Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978). In *Cedar-Riverside Associates v. United States*, 459 F.Supp. 1290 (D.Minn.1978), the court found the plaintiff had a right to attempt to establish an evidentiary base for its allegations, and, citing *City of Lafayette, supra*, held that activities outside the scope of the grant by the state are not immunized from antitrust liability. *Id.* at 1299.

The motion is denied.

## C. The *Noerr-Pennington* Doctrine.

■ This argument is in answer to plaintiffs' allegation that defendants' actions were a "mere sham". Defendants argue the *Noerr-Pennington* doctrine states concerted activities aimed at influencing state action (such as supporting an urban renewal project) cannot violate the Sherman Act lest defendants' First Amendment rights be abridged and the Sherman Act's purposes be expanded improperly. *Eastern Railroad President's Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135, 81 S.Ct. 523, 528, 5 L.Ed.2d 464 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657, 669, 85 S.Ct. 1585, 1592, 14 L.Ed.2d 626 (1965).

Since such "speech" is protected, defendants' "interaction" does not violate any antitrust laws, absent allegations of bribery, perjury, or the like, which are not present in this case. *Miracle Mile Associates v. City of Rochester*, 1979–2 Trade Cases, Para. 62,735, at 78,146 (W.D.N.Y. May 18, 1979) *aff'd* 617 F.2d 18 (2nd Cir.1980).

The DURA defendants also argue plaintiffs' claims should be dismissed because an antitrust claim based upon alleged antitrust violations set forth in a conclusive manner which do not allege the antitrust violations of a defendant should be dismissed. *Shatkin v. General Electric*, 171 F.2d 236 (10th Cir.1948). DURA also argues that the Local Government Antitrust Act of 1984, 15 U.S.C. §§ 34–36 exempts local governments and their officers and employees from any treble damages available under §§ 4, 4A or 4C of the Clayton Act.

Plaintiffs argue, similar to the arguments against the *Parker* doctrine, the *Noerr-Pennington* doctrine is inapplicable because defendants were engaging in something more than legitimate First Amendment speech to affect a state policy.

Just as the *Noerr-Pennington* doctrine would not immunize a defendant government official and private citizen from allegations of bribery or engaging in an illegal conspiracy, neither does it protect these defendants from these allegations of an antitrust conspiracy with private developers.

The statute is clear on treble damages, thus the government defendants should only be subject to compensatory damages.

## (3) PLAINTIFFS' CLAIMS ARE NOT RIPE FOR ADJUDICATION

### A. Civil Rights Claims Not Ripe.

■ Defendants argue plaintiffs have not yet suffered an injury of any kind, and even if there had been an injury it has not yet been "completed". In *United States v. 1,606.00 Acres of Land*, 698 F.2d 402, 407 (10th Cir.1983) the Tenth Circuit held the "[p]ossible future taking of property cannot give rise to a present action for damages ... Moreover, a threat to condemn one's property does not constitute a taking." Also precondemnation activity does not constitute a taking, *Danforth v. United States*, 308 U.S. 271, 281, 60 S.Ct. 231, 235, 84 L.Ed. 240 ("mere fluctuations in

value during the process of governmental decision making are incidents of ownership which cannot be considered a taking in the constitutional sense").

Also, even if a "taking" has occurred, plaintiffs' action is not yet ripe because they have failed to make an application for just compensation. *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 3121, 3124, 87 L.Ed.2d 126 (1985) ("the state action is not complete until it fails to provide adequate compensation for the taking. [It is] therefore require[d] that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action").

For the same reasons, substantive due process and procedural due process have not been violated since the plaintiffs have an adequate state law remedy.

Plaintiffs repeat their argument that they are *not* asserting their property has been taken without the payment of just compensation. As a result, a condemnation proceeding will not provide adequate relief. Further, there is a *present* injury as a proximate result of defendants' conduct, irrespective of the fact that a condemnation proceeding has not yet been instituted.

My statements in *Upah* concerning ripeness of these claims, are applicable to this action. Accordingly, defendants' motion with regard to this argument is denied:

Defendants are correct that plaintiff's land has not been condemned. However, their argument that plaintiff's claims are not ripe because the land has not been condemned is without merit. Defendants' equation of a taking with a condemnation ignores cases which have, for example, stated that unreasonable government regulation may constitute a taking in some instances. [citations omitted]. Plaintiff has alleged such unreasonable government regulation in this case. Additionally, defendants have neglected plaintiff's claims for due process violations which have already occurred. I am well aware that "[c]laims based merely upon 'assumed potential invasions' of rights are not enough to warrant judicial intervention". [citations omitted]. In the present case, however, plaintiff's allegations do not rest on the outcome of the condemnation action. Rather, plaintiff has asserted claims based on actions which defendants have allegedly already taken and which purportedly violate plaintiff's rights. Accordingly, defendants' motion to dismiss for lack of jurisdiction, on the ground that plaintiff's claims are not ripe, is denied.

*Id.*, at 1281.

*Memphis Community School District v. Stachura*, — U.S. —, 106 S.Ct. 2537, 91 L.Ed.2d 249 (U.S., 1986) does not overrule this language as the municipal defendants argue.

### B. Antitrust Claims Not Ripe.

■ Defendants argue the antitrust claims are also not ripe because they have not, as of yet, suffered any "antitrust injury".

The municipal defendants argue this court has no subject matter jurisdiction until all of these claims become ripe, i.e. *after* compensation proceedings in eminent domain, and after inverse condemnation proceedings pursuant to § 31–25–105, 12 C.R.S. (1977 Repl.Vol.); § 24–56–116, 10 C.R.S. (1982 Repl.Vol.).

For the reasons stated above in *Upah*, these claims are ripe.

### (4) INJUNCTIVE RELIEF IS NOT APPROPRIATE BECAUSE PLAINTIFFS HAVE AN ADEQUATE REMEDY AT LAW

■ Finally, defendants argue plaintiffs' claims must fail because they have an adequate remedy at law—a state law condemnation proceeding. Defendants assert injunctive relief is not available in a condemnation proceeding because there is an adequate remedy at law. *Colorado Central Power Company v. City of Englewood*, 89 F.2d 233, 235 (10th Cir.1937).

This relates back to the issue of whether there is an adequate remedy at state law.

As plaintiffs stated earlier, the relief sought is to remove the unlawful burden placed upon plaintiffs' property by defendants' fraudulent actions. If plaintiff is relegated to an action to recover just compensation, the fraudulent plan of defendants will have been successful.

Also, they argue the Supreme Court in *Bell v. Hood*, 327 U.S. 678, 683, 684, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) reaffirmed the power of federal courts "to issue injunctions to protect rights safeguarded by the Constitution and to restrain individual state officers from doing what the Fourteenth Amendment forbids the state to do." *Id.* at 684, 66 S.Ct. at 777.

The statute allows not only for "an action at law" but also a "suit in equity, or other proper proceedings for redress". The motion to deny injunctive relief is denied.

### ABSTENTION

■ There is a suggestion made by the municipal defendants that I exercise discretion to abstain by either: (1) dismissing the action without prejudice to plaintiffs' right to refile after they have completed their state remedies, or by (2) holding this action in abeyance and staying the exercise of jurisdiction pending the outcome of state action. *Pearl Investment Company v. City and County of San Francisco*, 774 F.2d 1460 (9th Cir.1985).

The Block 173 Associates plaintiffs (1445) request that if I grant abstention, I do it by way of a stay and not by dismissal, in order to maintain control over the litigation.

The Oberndorf plaintiffs (1075) argue plaintiffs' civil rights claims involve unambiguous state constitutional issues and therefore abstention is not warranted. *Davis v. Mann*, 377 U.S. 678, 684, 84 S.Ct. 1441, 1444, 12 L.Ed.2d 609 (1964) ("where a federal court's jurisdiction is properly invoked, and the relevant state constitutional provision is plain and unambiguous, there is no need for a federal court to abstain.") Also, the antitrust claims involve no state constitutional issues.

The BCED defendants argue that abstention is not needed in this case.

There is no compelling need for me to declare abstention. The motion is denied.

### ORDER ON MOTION FOR RECONSIDERATION

### I.

### INTRODUCTION

This is an action for injunctive and declaratory relief and damages. Plaintiffs argue a proposed urban renewal plan, approved by the city, interferes with their property rights and constitutes a regulatory taking in violation of the due process clause and equal protection clause of the Fourteenth Amendment. Plaintiffs also argue the plan violates the antitrust laws of the United States. In support thereof, plaintiffs allege that pursuant to an illegal conspiracy, the urban renewal plan fraudulently misrepresents their property, and the surrounding area to be redeveloped, as "blighted." As a result, the plan calls for the condemnation of plaintiffs' property to the benefit of defendant developer, BCED.

### II.

### BACKGROUND

On October 29, 1986, I issued a memorandum opinion and order in which I denied defendants' motions to dismiss for four separate reasons.

First, I held plaintiffs state civil rights claims upon which relief can be granted. Accordingly, I determined plaintiffs are *not* seeking just compensation for a legitimate government taking. Instead, they seek invalidation and money damages for the alleged illegitimate, illegal, and unconstitutional conspiratorial actions taken under the guise of a routine taking and condemnation proceeding. 42 U.S.C. § 1983 provides a remedy for such constitutional violations.

Second, I ruled plaintiffs' antitrust claims sufficiently state a cause of action

because they allege an actual antitrust injury, not a mere "but for" causality link between legitimate government action and plaintiffs' injury. Further, I concluded defendants are not immunized from antitrust claims under the *Parker* doctrine (which allows an "antitrust injury" *if* such injury is caused by legitimate and legislatively envisioned agency regulation); nor the *Noerr-Pennington* doctrine (which allows citizens to engage in comment on issues of public action such as an urban renewal plan even if those citizens benefit from such action). With respect to the *Parker* doctrine, plaintiffs allege *more* than a mere anti-competitive injury caused by the legitimate use of the state urban renewal laws; they allege an antitrust conspiracy and an unconstitutional taking of their property, not a constitutional taking for which just compensation must be paid. With respect to the *Noerr-Pennington* doctrine, plaintiffs allege defendants' actions constitute an illegal conspiracy and as such those actions are not protected by the First Amendment. Thus, defendants' alleged actions fall outside the ambit of legitimate and protected government activities and are protected neither by the *Parker* nor the *Noerr-Pennington* doctrines.

Third, I concluded both the civil rights claims and the antitrust claims are ripe for adjudication because, if plaintiffs' allegations are true, there are *present* injuries which plaintiffs suffer.

Finally, I decided injunctive relief is appropriate because plaintiffs, in effect, have no adequate state remedy for defendants' alleged fraudulent actions. I also held abstention was not necessary given the facts of this case and the status of the state court proceedings.

On November 14, 1986, defendant Denver Urban Renewal Authority submitted a motion for reconsideration of my memorandum opinion and order. Plaintiffs filed two separate briefs in response to DURA's mo-

tion for reconsideration, one by the Cook plaintiffs, and the other by the Block 173 plaintiffs and the Oberndorf plaintiffs.

## III.

## DURA'S MOTION FOR RECONSIDERATION

DURA asserts I erred in ruling plaintiffs' civil rights claims state claims upon which relief can be granted. The purported error is the failure to distinguish between the Colorado Constitution and the United States Constitution. Unlike the United States Constitution, DURA says the Colorado Constitution, Article II, Section 15, provides that a property owner whose property is *damaged* (not just "taken") for public or private use *must be compensated.*

> Private property shall not be taken *or damaged,* for public or private use, without just compensation. (emphasis added).

Constitution of Colorado, Article II, Section 15.

Accordingly, DURA argues this passage of the Colorado Constitution provides an owner with a claim for damages where the owner's property was not "taken", but only *damaged.* Thus, an owner may retain title to property and still obtain monetary damages caused by public use. DURA completes the loop by stating: in the instant case, there has not been a denial of any due process, since Colorado law provides for the payment of compensation for the type of damages plaintiffs allege in their 42 U.S.C. § 1983 claims.[1]

The two state remedies available, according to DURA, are either an inverse condemnation action or an action to declare the regulation unconstitutional. Since plaintiffs have not pursued these avenues of relief, DURA asserts plaintiffs' claims under § 1983 are not ripe for adjudication.

1. Plaintiffs are quick to point out, however, that these remedies are not for the type of damages they allege in the 42 U.S.C. § 1983 claims. In fact, this is the crux of the legal dispute because the type of injury alleged is not of the same type of injury the state framers contemplated when they wrote "taken or damaged" in the Colorado Constitution. DURA's suggested interpretation of Article II, Section 15 is somewhat fanciful and clearly beyond its obvious intent.

*Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (If a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the just compensation clause until it has used the procedure and been denied just compensation). Plaintiffs respond that DURA misapprehends the nature of their claims because these kinds of allegations remove the instant case from the category to which DURA is referring, thus rendering inverse condemnation proceedings and a declaratory judgment with monetary damages inappropriate and inapplicable as remedies.

I agree. This case does not turn on whether defendants' actions amounted to a "taking" as opposed to a "damaging" of plaintiffs' property such that, in either event, just compensation is the appropriate remedy. Instead, this case turns on whether just compensation via inverse condemnation proceedings or a declaratory judgment with monetary damages (which amounts to the same thing) are appropriate remedies when government agency action is not executed pursuant to a legitimate, statutorily-envisioned, state regulation, but is instead executed pursuant to an illegal conspiratorial action designed to violate a property owner's constitutional rights. Given the allegations in the instant case, there is no remedy under state law for plaintiffs to pursue in order for their civil rights claims to "ripen". The alleged conspiracy between BCED, DURA, and Denver has already taken place and the urban renewal plan has already been passed. It is an exercise in *ipse dixit* to say that the plan, itself, states a governmental purpose and is therefore legitimate.

## IV.

## CONCLUSIONS OF LAW

A. *The Nature of Plaintiffs' Civil Rights Claims.*

Defendants state in *Board of County Commissioners of Logan County v. Ald-*er, 69 Colo. 290, 194 P. 621 (1920), the Colorado Supreme Court ruled there could be a damage *without a taking,* or confiscation of property, under Article II, Section 15 of the Colorado Constitution. The court affirmed the award of property damages to the property owner against the county which constructed a bridge and an embankment resulting in some flooding on the owner's property. The court held Article II, Section 15, is applicable to damages resulting from the making of an improvement even though the land was not condemned by the county in eminent domain proceedings.

Defendants cite similar Colorado cases to support their argument: *Dandrea v. Board of County Commissioners,* 144 Colo. 343, 356 P.2d 893 (1960) (recovery for damage to property caused by change in grade of road adjacent to plaintiffs' land); *SRB v. Board of County Commissioners of Larimer County,* 43 Colo.App. 14, 601 P.2d 1082 (1979) (plaintiffs' property damaged though the land itself was not appropriated); *Gidley v. City of Colorado Springs,* 160 Colo. 482, 418 P.2d 291 (1966) (property owner entitled to the damages to his property resulting from the change of grade of the street on which his property abutted); *Copley [sic, Collopy] v. Wildlife Commission,* 625 P.2d 994 (Colo.1981) (plaintiff sought monetary damages for the destruction of crops by wildlife and Wildlife Commission regulations).

All of these cases, however, are immediately distinguishable because each case involves some *physical* invasion or destruction of real property or an appurtenant right. More importantly, the only complaints made by the property owners in these cases were for just compensation because the government activity, *pursuant to its legitimate and statutorily envisioned purpose,* constituted a taking or "damaging" of their properties. Under such circumstances, an inverse condemnation proceeding in which just compensation can be obtained is entirely appropriate. If the government action were an action pursuant to a legitimate, legal, statutorily en-

visioned public policy, then just compensation for the taking of, *or damages* to, plaintiffs' properties would be appropriate.

In the instant case, however, the actions of defendant are alleged to be illegal and fraudulent violations of plaintiffs' constitutional rights such that restricting plaintiffs to a suit for just compensation would not provide an adequate remedy. The critical difference is that plaintiffs allege illegitimate conspiratorial action *outside the ambit of the public policy contemplated by the legislative branch when it enacted statutes regarding condemnation.*

In *Gidley, supra,* and *Hermanson v. Board of County Commissioners,* 42 Colo. App. 154, 595 P.2d 694 (1979) (inverse condemnation allowed for a regulatory taking), the plaintiffs sought relief in the form of just compensation for taking and damaging of their property. Although there were contentions in both cases that a governmental entity had acted "unreasonably" and "unlawfully", the *sole relief requested* was just compensation for governmental activities deemed to be confiscatory by the plaintiffs.

The instant case, quite differently, involves allegations which exceed mere "questionable" condemnation proceedings, or a physical invasion "damaging" plaintiffs' real property. Again, plaintiffs are not requesting just compensation, instead they allege unconstitutional, illegal, and fraudulent actions taken in bad faith under color of state law. Just compensation is not the correct remedy for such violations. Thus, relegating plaintiffs to a claim for just compensation would not provide a meaningful remedy.

B. *Just Compensation: Money Damages and Inverse Condemnation Proceedings.*

Plaintiffs assert Colorado courts have held money damages are not an available

remedy for a *"regulatory"* taking, such as the instant case.[2] In *Gold Run, Ltd. v. Board of County Commissioners,* 38 Colo. App. 44, 554 P.2d 317 (1976), the Colorado Court of Appeals rejected the argument that money damages could be recovered for a regulatory decision that amounted to a taking, pointing out that invalidation, not inverse condemnation, is the appropriate remedy.

> Only when zoning is confiscatory does it rise to a "taking" and then the proper remedy is either to seek by declaratory judgment to invalidate the general zoning ordinance, See *Cherry Hills Village v. Trans-Roble Corp.,* 181 Colo. 356, 509 P.2d 797, or to challenge the particular rezoning authority through certiorari review pursuant to C.R.C.P. 106(a)(4). *Snyder v. Lakewood, Colorado,* [189 Colo. 421] 542 P.2d 371. By establishing that certiorari relief is the exclusive remedy for allegedly invalid zoning, as is challenged here, *Snyder* has precluded utilization of inverse condemnation.

554 P.2d at 319.

Therefore, in Colorado where a regulatory taking is alleged, the only available remedy is invalidation, not just compensation or "damages" under Article II, Section 15.

Plaintiffs argue any action based on Article II, Section 15, is a condemnation, or inverse condemnation action, by its very nature. Such actions are tried as condemnations and provide the property owner with just compensation, not damages. *Ossman v. Mountain States Tel. & Tel., Co.,* 184 Colo. 360, 520 P.2d 738 (1974). As I have already determined, just compensation is not the proper remedy given plaintiffs' allegations. A declaratory judgment action with a claim for damages is nothing more than an inverse condemnation action for just compensation.

## V. CONCLUSION

Defendants' reliance on Article II, Section 15, of the Colorado Constitution does

**2.** The passage of the declaration of blight and the adoption of the urban renewal plan are regulatory measures affecting the use and value of plaintiffs' property. Plaintiffs are still seeking monetary damages for antitrust violations.

Their position is that money damages are not available for an illegitimate regulatory taking pursuant to an inverse condemnation proceeding for just compensation such as the one alleged in the instant case.

**316**

not thwart plaintiffs' cause of action for the type of allegations they make. If it were otherwise, defendant municipalities could simply "assume away" all allegations of conspiratorial illegalities. Consequently, the egregiousness of their illegal conspiratorial actions could be reduced from a § 1983 claim for damages to routine compensation determinations.

A "taking" or "damaging" of property is, by definition, constitutionally acceptable if just compensation is paid. Thus, a § 1983 action would be inappropriate because there is no constitutional violation. However, when constitutional rights are violated pursuant to an illegal conspiracy condemnation is no longer the exclusive remedy. The proper remedy for *constitutional violations* is a § 1983 civil rights action.

Plaintiffs' allegations must be kept in mind. BCED sought to develop a large area of downtown Denver but could not pursuade plaintiffs to sell their property. BCED complained to the City and County of Denver and to Dura that the project could never come to fruition unless the plaintiffs' property could be acquired. Pursuant to a trilateral conspiracy, Denver created a "sham plan" to acquire the land through condemnation proceedings and by declaring plaintiffs' property as a "slum, blighted" area. Such favoritism to BCED and the means by which DURA and the City formulated the urban renewal plan violated plaintiffs' constitutional guarantees. At this point the § 1983 claims attach and the just compensation remedy becomes inappropriate.

It is ORDERED that defendants' motion for reconsideration is denied.