558 P.2d 442 (1976)
DENVER URBAN RENEWAL AUTHORITY, a Body Corporate and Politic of the State of Colorado, Petitioner-Appellant,
v.
Wolfgang POGZEBA, also known as Wolfgang H. Pogzeba, and John Pogzeba, et al., Respondents-Appellees.
No. 75-760.
Colorado Court of Appeals, Div. III.
July 29, 1976.
Rehearing Denied August 26, 1976.
Certiorari Denied January 3, 1977.
*443 William G. Berge, David L. McCarl, Denver, for petitioner-appellant.
Holme, Roberts & Owen, John L. Kane, Jr., JoAnn Soker, Zarlengo, Zarlengo & Denison, Spencer T. Denison, Denver, for respondents-appellees.
STERNBERG, Judge.
The principal question in this appeal is whether evidence of reproduction cost of an old building, formerly, but no longer used for religious purposes, is a proper measure of market value in an eminent domain proceeding. The case was tried to a commission which permitted use of this standard. We conclude that, absent a reasonable expectation that the building would be replaced, evidence of replacement cost is not proper. Therefore we reverse.
In 1973, Denver Urban Renewal Authority (DURA) condemned 21,932 square feet of real estate located at the northeast corner of 10th and Lawrence Streets in Denver. The owners had acquired the property in several purchases, the first of which was about ten years prior to the taking, and they paid a total of about $46,000. There are three buildings located on the property, but the arguments of the parties are focused on the valuation techniques employed by the property owners with respect to one of these structures. That building, known as the chapel, was built as an Episcopal church in 1875. In 1903 it was sold to a Jewish congregation and for many years thereafter was used as a synogogue. It has not been used for religious purposes for the past 15 years, however, and at the time of this action the present owners, who are not representatives of a religious sect, were using the chapel as an artists' gallery and studio. The chapel is a substantial stone structure and because of its religious, aesthetic, and historical significance was the first building designated by the Denver City Council as a "landmark." It also appears in the National Register of Historic Places.
The landowners presented testimony of the cost of reproduction of the chapel. Because of the heavy stone of which the building was constructed, it was estimated that it would cost $142,000 to build a replica of it. Evidence of the historical significance of the chapel was also presented.
DURA presented two appraisal witnesses. The first used the comparable sales method to arrive at the value of the land and the income approach to value the land and improvements and concluded that the total value of the subject property was $68,500. DURA's second appraisal expert testified to a market value of the subject property of $69,500, arriving at the conclusion by use of similar valuation techniques.
The court-appointed commission found the value of the land and improvements to be $163,000. On appeal, as at trial, DURA contends that it was error to receive evidence of reproduction cost and of the historical character of the chapel.
The definition of market value in Colorado, as stated in the cases, see e. g., Department of Highways v. Schulhoff, 167 Colo. 72, 445 P.2d 402, is correctly expressed in Colo.J.I. 26:3, as follows:
"Reasonable market value' means the fair, actual, cash market value of the property. It is the price the property could have been sold for on the open market, for cash, under the usual and ordinary circumstances, that is, under those circumstances, where the owner was willing to sell and the purchaser was willing to buy, but neither was under an obligation to do so."
It has long been the law that evidence of reproduction cost as a basis for arriving at market value may properly be received only in rare and extreme cases. See generally Annot., 172 A.L.R. 236. *444 Only where a building is of a special type and its use is based on that uniqueness and where evidence demonstrates that it is reasonably to be expected that the building would be replaced by a similar one, is such evidence admissible. In re Lincoln Square Slum Clearance Project, 15 A.D.2d 153, 222 N.Y.S.2d 786 (1961). In considering replacement cost as a measure of value the court in Lincoln Square hypothesized the existence of a lighthouse whose use for that purpose has been discontinued by governmental authorities culminating in its sale to private parties. The court stated "If [a lighthouse] in private ownership, and consequently no longer functioning to guide vessels, should be taken in eminent domain its reproduction cost would hardly be considered the measure of its value." That analogy is particularly appropriate here.
The record presents no basis for concluding that the owners of the chapel would reconstruct a replica of the building either to continue its present use or for any other reasonably contemplated future use. Nor is there any basis for a conclusion that economic benefits accrue or would accrue to the owners because of the specialized nature of the chapel. Thus, it was error to allow evidence of cost of reproduction to be received by the condemnation panel, and since the award was clearly based on that approach to value, plus the value of the land, the award cannot be allowed to stand. See also United States v. 44.00 Acres of Land, 234 F.2d 410 (2d Cir.) (1956); United States v. Buhler, 305 F.2d 319 (5th Cir.) (1962); and 2 L. Orgel, Valuation Under the Law of Eminent Domain § 191 (2d ed.).
DURA's other contentions of error have been considered and found to be without merit.
Judgment reversed and cause remanded for a new trial.
BERMAN and KELLY, JJ., concur.