Carter M. FARRAR, Sr. and Marjorie J. Farrar, Respondents–Appellants and Cross–Appellees,

v.

TOTAL PETROLEUM, INC., Respondent–Appellee and Cross–Appellant.

No. 85CA0055.

Colorado Court of Appeals, Div. I.

Sept. 27, 1990.

■■■■■■■■■■■■■■■■■

Hutchinson, Black, Hill & Cook, Clark G. Edwards, Buchanan, Gray, Purvis & Schuetze, John A. Purvis, Boulder, for respondents-appellants and cross-appellees.

Bernick and Moch, Robert B. Moch, Denver, for respondent-appellee and cross-appellant.

Opinion by Judge CRISWELL.

In this eminent domain proceeding, Carter M. Farrar, Sr. and Marjorie J. Farrar (landlords) appeal and Total Petroleum, Inc. (tenant) cross-appeals from a judgment of the district court that allocated between them the proceeds paid by the condemnor, Boulder Urban Renewal Authority (BURA). In a prior opinion of this court, *Farrar v. Total Petroleum, Inc.*, 765 P.2d 613 (Colo.App.1988), we reversed the trial court's judgment. Our judgment, however, was reversed by the supreme court, 787 P.2d 164 (Colo.1990), which remanded the cause to us for our consideration of issues raised by the parties but not addressed by us in our former opinion. Having considered those other issues, we reverse the judgment of the trial court and remand for its reconsideration of the evidence in light of the conclusions expressed in this opinion.

Landlords owned a parcel of ground containing about 88,000 square feet. They leased a portion of that property, containing about 18,750 square feet, to tenant, who used that parcel and the improvements located thereon for a gasoline service station, pursuant to a written lease. That lease provided that, in the event of the exercise of eminent domain, the landlords would receive that part of "the award or price" which the condemning authority paid that was "attributable to the land (only)," while the tenant would receive that part "attributable to the improvements, betterments and all other things situated on the land that is taken."

In 1982, BURA instituted eminent domain proceedings to acquire title to all of the land owned by landlords, including the land and improvements leased to tenant. For administrative convenience, BURA divided the total area into three parcels (parcels 4, 5 and 6), one of which (parcel 5) consisted of the property leased to tenant.

At an early stage in these proceedings, BURA sought to obtain immediate possession of all of the property described in its petition pursuant to the provisions of § 38–1–105(6), C.R.S. (1982 Repl.Vol. 16A). In doing so, it relied upon the opinion of its appraiser who evaluated the entire 88,000 square feet (including all improvements) at $858,000. Of this amount, this appraiser opined that the land leased to tenant was worth $188,000, while the improvements located thereon had a value of $104,000, for a total value for this parcel of $292,000. BURA and the landlords stipulated to the entry of an order of immediate possession of the entire parcel, and BURA deposited the sum of $858,000 with the court. Landlords were later authorized to withdraw the sum of $324,000.

Later still, landlords and BURA agreed that the entire parcel owned by landlords had a fair market value of $1,012,000, based upon a land value of $11.50 per square foot and without attributing any value to any improvements. Based upon this evaluation, all of the parties, including tenant, stipulated that BURA would receive title to all of the property and all

claims against it would be released upon BURA's deposit with the court of the additional sum of $157,949, being the difference between the sum of $1,012,000 plus witness and appraisal fees, and the initial deposit of $858,000. BURA made this additional deposit.

Thereafter, landlords and tenant were unable to agree as to the amount that each of them was entitled to receive under the terms of the lease, and accordingly, an evidentiary hearing upon this issue was held before the trial court. At the end of that hearing, the trial court determined that tenant was entitled to receive $77,000 as the value of the improvements on the leased property.

## I.

Because of the nature of the error that tenant claims the trial court committed, we address its cross-appeal first.

Tenant argues that, because the stipulation authorizing BURA to obtain immediate possession of all of landlords' property was based upon an appraisal that attributed the value of $104,000 to the improvements on the land leased to tenant, this was the amount "attributable" to the improvements within the meaning of the lease, and therefore, the trial court was bound to award this sum to it. We disagree.

Section 38–1–105(6), C.R.S. (1982 Repl. Vol. 16A) allows a condemning authority to obtain possession of property in the process of being condemned "during the pendency" of such proceedings. To do so, however, the condemning authority must deposit with the court an amount that the court determines to be sufficient to pay compensation to the owner, when the amount of such compensation is later "ascertained." After this amount is deposited, the statute authorizes the landowner to withdraw an amount not to exceed three-fourths "of the highest evaluation ... testimony presented by the [condemning authority] at the hearing for possession...."

■ The deposit required by this statute is neither payment nor part payment of the compensation later determined to be due

(except to the extent of any amount withdrawn by the landowner). *Clelland v. McCumber*, 15 Colo. 355, 25 P. 700 (1891). The deposit serves simply as security for the ultimate payment of compensation, and if the final judgment in the eminent domain proceedings determines that only a lesser amount is due, the condemning authority is not bound to pay the amount that the court previously required it to deposit. *Englewood v. Reffel*, 34 Colo.App. 103, 522 P.2d 1241 (1974).

■ Thus, BURA's deposit of the amount required to obtain possession of landlords' property under § 38–1–105(6) cannot be said to constitute BURA's determination of the value of any of the property taken. Likewise, neither BURA nor landlords were bound by the appraisal upon which the deposited amount was based, nor by the appraisal technique or approach utilized by that appraisal. Either or both of them remained free to present at any later evaluation hearing such testimony and other evidence as might be relevant, without regard to the amount earlier ordered to be deposited. *See Englewood v. Reffel, supra.*

We conclude, then, that the trial court committed no error in refusing to treat the appraisal that BURA relied upon in obtaining the order of immediate possession as a binding determination of the amount that was to be "attributed" to the improvements under the lease.

## II.

The parties presented the testimony of several experts who gave their opinions as to the value of the improvements that existed on the premises on the date of the taking. In arriving at its conclusion with respect to this subject, however, the trial court expressly relied upon the opinion of only one of these experts.

This expert based his opinion of the value of the improvements upon the cost of reproducing them, but deducted therefrom the necessary cost of remodeling the existing improvements to place them in a substantially new condition. Landlords insist that (1) it is improper to use the cost new,

less depreciation, method of evaluation in these circumstances, and (2) the expert's opinion was, in any event, incompetent. We reject landlords' first argument, but agree with its second assertion.

### A.

■ Relying upon *Dandrea v. Board of County Commissioners*, 144 Colo. 343, 356 P.2d 893 (1960), and *Denver Urban Renewal Authority v. Pogzeba*, 38 Colo.App. 168, 558 P.2d 442 (1976), landlords first argue that an appraiser may not base his opinion of the value of realty upon the cost new, less depreciation, method of evaluation, if there are sufficient sales of comparable properties to allow an opinion of value to be arrived at by use of that latter method. We disagree.

Landlords' argument fails to make the distinction that the *Dandrea* court insisted was necessary. So long as reproduction or repair costs are not used as the *measure* of damages, they may properly be considered in arriving at the determination of the *value* of the property. *Dandrea v. Board of County Commissioners, supra. See also City of Boulder v. Orchard Court Development Co.*, 527 P.2d 931 (Colo.App.1974) (not selected for official publication).

This court's holding in *Denver Urban Renewal Authority v. Pogzeba, supra,* is not inconsistent with our determination here. There, it was necessary to determine the entire value of both the land and the improvements thereon as a collective, single unit. In addition, the improvements involved in that case consisted of a chapel which was no longer in use, and the record demonstrated that neither the existing improvements, nor any replica thereof, would be used for such a purpose in the foreseeable future. Given these unique circumstances, therefore, this court held that the cost to reproduce this chapel had no relevancy to the present value of the property involved.

■ Here, in contrast, the court was required to place a value upon the improvements alone, without regard to the value of the land underlying them. Further, the

evidence established both that these improvements were being used for their intended purpose at the time of the taking and that, but for these eminent domain proceedings, they would have been upgraded to a substantially new condition. Under these circumstances nothing in *Pogzeba* prevented the presentation of evidence as to their reproduction costs, less depreciation, as one of the means of attempting to establish the value of these improvements; and, even if another method of evaluating the improvements could also appropriately be used for this purpose, it was not error to consider the cost new, less depreciation, method of evaluation as well.

### B.

■ The expert whose testimony was relied upon by the trial court was called by the tenant. This witness testified that an employee of the tenant told him that the reproduction costs of the improvements, which consisted of a small office building, gas pumps and tanks, surfacing, and related facilities, would be approximately $165,000. The expert said that he relied upon this figure, but deducted a total of $61,200 as the estimated costs to upgrade the present improvements to "current standards." This resulted in the expert's opinion that the "net value" of the present improvements was $104,000.

The $61,200 figure used by this expert as necessary upgrading costs assumed that it would cost only $2,800 for the replacement of eight pumps, while the undisputed testimony established that the actual replacement cost for such pumps would be $30,000, which was some $27,000 more than the amount used by this expert in reaching his opinion of value. The trial court, therefore, deducted this $27,000 from the expert's figure of $104,000 and awarded tenant the sum of $77,000 as the value attributable to the improvements.

Crucial to this expert's ultimate opinion was that it would cost $165,000 to reproduce the improvements. However, the tenant's employee from whom the expert allegedly obtained this construction cost estimate testified that he had no recollection of providing such a figure to the expert. In addition, this employee said that he did not have any knowledge of construction costs, that he did not have the expertise to estimate them, and that any figure he might have given would have been mere speculation.

The trial court expressly acknowledged that the expert's assumption as to these construction costs was "questionable information at the least." Landlords argue, however, that this underlying assumption was mere speculation, and as a result, the expert's opinion was not competent evidence of value. We agree.

■ Under CRE 703, a qualified expert may base his opinion upon any facts or data "of a type *reasonably* relied upon by experts in the particular field." (emphasis supplied) However, factual premises that are contrary to the undisputed evidence cannot, as a matter of law, be reasonably relied upon by any expert. *KN Energy, Inc. v. Great Western Sugar Co.*, 698 P.2d 769 (Colo.1985); *In re Claim of High*, 638 P.2d 818 (Colo.App.1981).

■ Likewise, an expert opinion that relies upon an unreliable, unsupported assumption is not competent evidence under CRE 703. *See Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666 (D.C.Cir.1977); *Zenith Radio Corp. v. Matsushita Electric Industrial Co.*, 505 F.Supp. 1313 (E.D.Pa. 1980).

■ We conclude, therefore, that the opinion evidence expressly relied upon by the trial court here was not competent because it relied upon an estimate of construction costs that the undisputed evidence demonstrated was not only not reliable but was, indeed, mere speculation. While the trial court recognized that the expert's assumption was "questionable," it was in reality legally incompetent. *See Dandrea v. Board of County Commissioners, supra* (expert's reliance upon an "errant assumption" renders it "of no probative value").

However, in addition to the testimony of the expert upon which the trial court relied, at least three other experts expressed their

opinions as to the value of the improvements. The range of values expressed by these other experts was from a low of no value to a high of $83,000. And, while the trial court did not rely upon any of these opinions in finding the value of the improvements to be $77,000, neither did it find this other testimony to be incredible. Its reliance upon the testimony of the single expert implies, at best, nothing more than that the court considered that opinion to be more persuasive than the others.

Hence, because there is other competent evidence of the value of the improvements, which has not been determined by the trial court to be incredible, and because the trial court's reliance upon incompetent opinion testimony made it unnecessary for it to determine the persuasiveness of this other evaluation testimony, we shall remand this cause to that court to allow it to reconsider its determination of the value of the improvements.

The judgment is reversed, and the cause is remanded to the trial court with directions to reconsider its former determination consistent with the views set forth herein. In undertaking such consideration, the trial court may, in its discretion, allow the parties to present further evidence upon the issue of value, if it deems it appropriate to do so.

PIERCE and METZGER, JJ., concur.